```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                  :
UNITED STATES OF AMERICA,                         :
                                                  :
                -v-                               :       18-CR-713 (JMF)
                                                  :
NKANGA NKANGA,                                    :       ORDER
                                                  :
                        Defendant.                :
                                                  :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, District Judge:

On March 27, 2020, Defendant filed a motion for release from custody. ECF No. 73. He seeks "immediate release on bail pending execution of sentence" or "alternative relief . . . accomplishing [the] same" in light of at least one confirmed case of COVID-19 at the Metropolitan Detention Center ("MDC Brooklyn"), the detention facility currently holding him. *See* ECF No. 74 ("Defs. Mem."), at 1. The Court has ordered the parties to appear telephonically for an expedited hearing on Defendant's motion on March 30, 2020, at 3 p.m. ECF No. 82; *see also* ECF No. 83 (consenting to a telephone hearing and waiving the defendant's presence).

In addition to the issues raised in the parties' briefing, *see* Defs. Mem.; ECF Nos. 75 ("Parker Decl."), 77 ("Opp."), 80 ("Reply"), the parties should be prepared to address:

- How soon does the Government expect the Bureau of Prison ("BOP") will be able to designate the "official detention facility at which the [Defendant's] sentence is to be served"? *See* 18 U.S.C. § 3585(a). How soon thereafter would the BOP be able to relocate Defendant to that facility? Has the BOP suspended the movement of all inmates within the federal prison system for 30 days due to COVID-19? *See* Parker Decl. ¶ 5. If so, does the Government anticipate that the suspension will be further extended?

- Based on the latest information available to the Government, how many cases of COVID-19 have been confirmed at MDC Brooklyn, including among prisoners, correctional staff, and visitors? *See* Opp. 7 (stating there was only one confirmed case of an inmate testing positive as of March 28, 2020). How many suspected/symptomatic cases are there at MDC Brooklyn? How many confirmed and suspected cases are in the same wing of the facility as Defendant? The same cellblock? The same cell? How many new confirmed cases does the BOP expect there will be at MDC Brooklyn in the coming weeks?

- Has MDC Brooklyn quarantined not just the inmate who tested positive, *see* Opp. 7, but also anyone who interacted with that inmate – including correctional staff? How many people were potentially exposed?

- What systems, procedures, and protocols are in place at MDC Brooklyn to identify prisoners who face especially severe risks from COVID-19 — for example, because of respiratory conditions or other health conditions? What protections, if any, are offered to high-risk prisoners? *See* ECF No. 77-2, at 2 ("MDC Brooklyn has not isolated its 'at risk' population at this time because the number of inmates is too large to contain and isolate on one or even two units."). Does Defendant qualify for special protection within MDC Brooklyn or transfer to another facility? *See* Opp. 11 ("Such diagnoses indisputably present health concerns, as does his age."). Does the BOP have a record of Defendant being asthmatic or having a history of asthma? *See* Parker Decl. ¶ 15.

- If Defendant contracts COVID-19 while being held at MDC Brooklyn, what care will he receive? What medical facility, if any, will he be sent to? Does that facility currently have the space (e.g., intensive care unit beds) and resources (e.g., ventilators) to treat Defendant if he were to become infected?

- How many COVID-19 test kits or other testing capacity does MDC Brooklyn currently have? *See* ECF No. 74-1, ¶ 15(n) ("MDC Brooklyn currently has no COVID-19 test kits.").

- Both parties have argued that a sentence is "executed" under 18 U.S.C. § 3143(a)(2) when the sentence "commences" under 18 U.S.C. § 3585(a). The Government argues, further, that under Section 3585(a), the sentence for a defendant who "was in [federal] custody at the time the sentence was imposed" commences "the moment it was imposed." Opp. 4. Would accepting the Government's interpretation result in the term "execution" becoming redundant with "imposition" or otherwise superfluous in Section 3143(a), at least as to prisoners like Defendant? Should that weigh against accepting the Government's interpretation?

- Are there reasons to interpret the term "execution" under Section 3143(a)(1) differently from the term "commences" under Section 3585(a)? For example, does the Second Circuit's use of the phrase "the *execution* of a sentence" in the context of collateral challenges under 28 U.S.C. § 2241, including challenges to "prison conditions in the facility where [the defendant] is incarcerated," suggest that a sentence is "executed" when a defendant begins serving his sentence at his or her designated facility? *See Adams v. United States*, 372 F.3d 132, 135 (2d Cir. 2004).

SO ORDERED.

Dated: March 30, 2020  
      New York, New York

                                        JESSE M. FURMAN  
                                        United States District Judge