```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES OF AMERICA,                                         :
                                                                  :
           -v-                                                    :   18-CR-713 (JMF)
                                                                  :
NKANGA NKANGA,                                                    :   MEMORANDUM OPINION
                                                                  :        AND ORDER
                          Defendant.                              :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, District Judge:

The country faces unprecedented challenges from the novel Coronavirus ("COVID-19") pandemic. Those detained in jails and prisons face particularly grave danger. *See Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctr. for Disease Control, at 2 (Mar. 23, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf (hereinafter "CDC Guidance").[1] Realistically, the best — perhaps the only — way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible. *See* Jan Ransom et al., *"A Storm is Coming": Fears of an Inmate Epidemic as the Virus Spreads in the Jails*, N.Y. Times (Mar. 20, 2020), *available at* https://www.nytimes.com/2020/03/20/nyregion/nyc-coronavirus-rikers-island.html (quoting the chief medical officer of New York City's jail system: "A storm is coming . . . . Please let as many out as you possibly

---

[1] *See also* Ltr. from Sen. Richard J. Durbin et al. to Att'y Gen. William P. Barr et al., at 1 (Mar. 23, 2020), *available at* https://www.durbin.senate.gov/imo/media/doc/Letter.%20to%20DOJ%20and%20BOP%20on%20COVID-19%20and%20FSA%20provisions%20-%20final%20bipartisan%20text%20with%20signature%20blocks.pdf ("Conditions of confinement do not afford individuals the opportunity to take proactive steps to protect themselves, and prisons often create the ideal environment for the transmission of contagious disease.").

can."). Many jurisdictions have begun doing just that. *See, e.g.*, Tracey Tully, *1,000 Inmates Will Be Released from N.J. Jails to Curb Coronavirus Risk*, N.Y. Times (Mar. 23, 2020), *available at* https://www.nytimes.com/2020/03/23/nyregion/coronavirus-nj-inmates-release.html. So, too, have judges begun granting bail in individual cases where the law allows them to do so. *See, e.g.*, *United States v. Stephens*, No. 15-CR-95 (AJN), 2020 WL 1295155, at *3 (S.D.N.Y. Mar. 19, 2020); *Matter of Extradition of Toledo Manrique*, No. 19-MJ-71055-MAG-1 (TSH), 2020 WL 1307109, at *1 (N.D. Cal. Mar. 19, 2020). The dangers of the moment, however, call for more systemic action than a judge can grant in any one case. Moreover, there are many cases where temporary release of an inmate would be the rational and just course of action, but the law does not give a judge the authority to take it. This is one such case, and it underscores the need for a swift congressional and executive response.

The Defendant in this case, Dr. Nkanga Nkanga, is a sixty-seven-year old former doctor with no prior criminal record who, in the course of an otherwise legitimate medical practice, unlawfully prescribed oxycodone and other controlled substances for non-medical purposes. On October 24, 2019, the Court accepted Dr. Nkanga's guilty plea to several narcotics offenses. *See* ECF No. 50 ("Oct. 24, 2019 Tr."), at 2. If the law had given the Court discretion to leave Dr. Nkanga at liberty on bail pending sentencing (and to allow voluntary surrender thereafter), the Court would have done so, as there was no reason to believe that he posed a risk of flight and, in the absence of his medical license and practice, no reason to believe he posed a danger to any individual or the community. On top of that, he suffers from various medical conditions, including asthma and complications resulting from a stroke in 2008. *See id.* at 4-5; *see also* ECF No. 77-1 ("Sentencing Tr."), at 36-37, 42-43; ECF No. 75 ("Parker Decl."), ¶ 15; ECF No. 85 (attaching photographs of Dr. Nkanga's prescription medication and inhaler). But given the

nature of Dr. Nkanga's offenses, and the absence — at the time of his plea — of "exceptional reasons" to justify his release, *see* 18 U.S.C. § 3145(c), the law gave the Court no discretion, *see* 18 U.S.C. § 3143(a)(2), and the Court ordered Dr. Nkanga detained without objection, *see* Oct. 24, 2019 Tr. 2-3.

On March 12, 2020, after COVID-19 had appeared in New York City, but before its implications were fully felt in the community, Dr. Nkanga appeared before the Court for sentencing. After concluding that a "substantial" downward variance from the recommended Guidelines range of 108 to 135 months' imprisonment was warranted in light of Dr. Nkanga's serious health issues and "declining condition," among other things, the Court sentenced Dr. Nkanga to thirty-six months' imprisonment. *See* Sentencing Tr. 41-43; ECF No. 66. The next day, at defense counsel's request, the Court recommended to the Bureau of Prisons ("BOP") that Dr. Nkanga be designated to Federal Medical Center, Devens "to ensure that he receives appropriate medical care." ECF No. 68; *see* 18 U.S.C. § 3621(b) (requiring the BOP to designate "the place of the prisoner's imprisonment" based upon, among other things, "the prisoner's mental and medical health needs" and "recommendations of the sentencing court"). But Dr. Nkanga has not yet been designated to any prison; instead, he remains in the Metropolitan Detention Center (the "MDC"), a federal jail in Brooklyn, New York. And there he is likely to remain for a while. With a few exceptions, all inmate movement within the BOP system was suspended on March 13, 2020, for thirty days, subject to further review and extension. *See* ECF No. 81, at 1. Judging from the federal government's most recent guidance, it is likely that the suspension will indeed be extended. *See* Michael D. Shear, *Trump Extends Social Distancing Guidelines Through End of April*, N.Y. Times (Mar. 29, 2020), *available at* https://www.nytimes.com/2020/03/29/us/politics/trump-coronavirus-guidelines.html.

3

That might be bad enough, but the MDC is no place for someone considered to be high risk for COVID-19 — which Dr. Nkanga, at sixty-seven years old and with a history of asthma, plainly is, *see, e.g.*, Parker Decl. ¶¶ 6, 15; CDC Guidance at 16; *People with Moderate to Severe Asthma*, Ctr. for Disease Control (Mar. 17, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fasthma.html. So far, there is at least one confirmed case of the disease in the MDC. But, by the warden's own admission, the MDC "has not isolated its 'at risk' population at this time because the number of inmates who fall into this category is too large to contain and isolate on one or even two units." ECF No. 77-2 ("Warden Letter"), at 2. Indeed, as of March 18, 2020, the inmate population at the MDC was "not locked down." *Id.* at 2. Instead, inmates could "walk around and utilize the common area of their housing unit as normal operations." *Id.* at 1. If inmates wished, they could "remain in their cells to self-seclude," *id.*, but, of course, many of them — apparently including Dr. Nkanga — share their cells with other inmates, ECF No. 74 ("Defs. Mem."), at 12. Cleaning supplies are issued only "once a week" for "[i]nmate orderlies" to clean the common spaces and inmates to clean their own cells. Warden Letter 2. The dangers — to Dr. Nkanga and others like him — are self-evident. *See, e.g.*, Reuters, *Prisoner Serving Time for Drug Charge Is First U.S. Inmate to Die from COVID-19*, N.Y. Times (Mar. 28, 2020), *available at* https://www.nytimes.com/reuters/2020/03/28/us/28reuters-heath-coronavirus-prison-death.html?searchResultPosition=2.

In light of these circumstances, on March 27, 2020, Dr. Nkanga filed a motion for immediate release from custody. ECF No. 73. Dr. Nkanga seeks "immediate release on bail pending execution of sentence" or "alternative relief . . . accomplishing [the] same." Defs. Mem.

4

1. More specifically, he presses three grounds for relief. First, he argues that he is eligible for bail under 18 U.S.C. § 3145(c), which authorizes temporary release for individuals who are "not likely to flee or pose a danger to the safety of any other person or the community if released" upon a "clear[] show[ing]" of "exceptional reasons why such person's detention would not be appropriate." *See* 18 U.S.C. §§ 3143(a)(1), 3145(c). Second, he argues that he is entitled to correction of an "arithmetical, technical, or other clear error" in his sentence pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure. Finally, he moves for a new trial under Rule 33(a). Regrettably, although the balance of risks and benefits weighs heavily in favor of granting temporary release — as Dr. Nkanga does not pose a danger to the community and is no risk of flight if released, yet he is plainly in grave danger at the MDC and, if infected, will pose a danger to others — the Court concludes that it is powerless under the law as it currently stands to grant Dr. Nkanga relief.

Dr. Nkanga's second and third arguments can be swiftly rejected. Rule 33(a) is simply inapplicable because Dr. Nkanga pleaded guilty and did not go to trial. *See United States v. Graciani*, 61 F.3d 70, 78 (1st Cir. 1995) ("By its express terms, Rule 33 is confined to those situations in which a trial has been had."); *United States v. Eberhard*, No. 03-CR-562 (RWS), 2005 WL 2172031, at *2 (S.D.N.Y. Sept. 8, 2005) ("Since Eberhard pled guilty in this case, no trial occurred; and, as he does not seek to withdraw his guilty plea at this time, his plea remains intact, rendering Rule 33 wholly inapplicable."). Moreover, even if the Rule did apply, Dr. Nkanga has identified no "real concern that an innocent person may have been convicted" and no other reason that "letting a guilty verdict stand would be a manifest injustice." *See United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (internal quotation marks omitted). Rule 35, meanwhile, permits corrections of only "arithmetical, technical, or other clear error[s]," which

5

must be "obvious" and "would almost certainly result in a remand of the case to the trial court." *United States v. Abreu-Cabrera*, 64 F.3d 67, 72 (2d Cir. 1995) (quoting Fed. R. Crim. P. 35 & Adv. Comm. Notes to 1991 Amendments). The Rule does not allow a district court to alter its sentence based on a change of heart or changed circumstances. *See id.* at 72. Nor does the Rule authorize a district court to "reconsider the application or interpretation of the sentencing guidelines." *United States v. Goddard*, No. 17-CR-439 (LAP), 2018 WL 4440503, at *1 (S.D.N.Y. Sept. 17, 2018) (quoting *Abreu-Cabrera*, 64 F.3d at 72). Yet that is precisely what Dr. Nkanga asks the Court to do. *See* Defs. Mem. 15 (arguing "that the Court failed to consider the applicable Grounds for Departure Policy Statement adopted under USSG § 5K2.0(2)(B), which provides for departures based on circumstances of a kind not adequately taken into consideration, specifically unidentified circumstances").

Finally, the Court lacks authority to grant Dr. Nkanga bail under Section 3145(c). In general, 18 U.S.C. § 3143(a)(2) mandates detention for "a person" who was convicted of a drug offense "and is awaiting imposition or execution of sentence." Under 18 U.S.C. § 3145(c), however, a district court has authority to order the release of someone subject to detention pursuant to Section 3143(a)(2) if he "meets the conditions of release set forth in section 3143(a)(1)" and "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." *See United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004) ("The test under § 3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.'"). At the time of Dr. Nkanga's plea, the Court lacked authority to grant release under this provision because, although he concededly met the conditions of release under Section 3143(a)(1), he could not, and did not, show that there were "exceptional reasons why . . . [his] detention would not be

appropriate." 18 U.S.C. § 3145(c). Today, by contrast, Dr. Nkanga could, and would, easily make that showing. Indeed, by any reasonable standard, the risks posed to Dr. Nkanga by COVID-19 if he remains in custody constitute "exceptional reasons" why his detention is not appropriate at this time. *See United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991) (finding "exceptional reasons" in light of "a unique combination of circumstances giving rise to situations that are out of the ordinary").[2]

The problem is that, upon sentencing Dr. Nkanga on March 12, 2020, and remanding him to the BOP's custody, the Court lost its authority to grant bail under Section 3143(a) and, by extension, Section 3145(c). By its terms, Section 3143(a) authorizes a district court to grant bail only if a person is "awaiting imposition or execution of sentence." The Court has indisputably already imposed Dr. Nkanga's sentence and, for substantially the reasons stated in the Government's brief, Dr. Nkanga's sentence has already executed. *See* ECF No. 77 ("Opp."), at 1-4. In brief, both parties argue that the "execution of sentence" occurs when the sentence "commences" under 18 U.S.C. § 3585(a). *See* Def. Mem. 2; Opp. 2. That statute provides that a sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." By the statute's plain terms, that means that where a defendant is already in federal custody at the time of sentencing, as Dr. Nkanga was, the sentence commences — and is executed — upon imposition and remand to BOP custody. *See United States v. Williams*, 601 F. App'x 685, 687 (10th Cir. 2015) (unpublished) ("A federal sentence normally

---

[2] Notably, during a telephone conference held on the record on March 30, 2020, the Government conceded that the circumstances created by COVID-19 would qualify as "exceptional reasons" justifying Dr. Nkanga's release if the Court had authority to grant release under Section 3145(c) today.

7

commences immediately following sentencing when, as here, the defendant is in primary federal custody."); *cf. Lopez v. Terrell*, 654 F.3d 176, 184 (2d Cir. 2011) ("When the BOP calculates [Good Conduct Time], therefore, it will include the time spent in custody *following the date of sentencing* as well as any period of presentence custody credited under § 3585(b), since both periods, in combination, constitute the defendant's federal sentence." (emphasis added)). The fact that the BOP has not designated "the facility at which the sentence is to be served" is immaterial; Dr. Nkanga is in BOP custody "awaiting transportation" there just the same. *See Pope v. Perdue*, 889 F.3d 410, 416 (7th Cir. 2018) ("[Section 3585(a)] requires that the inmate be awaiting transport to a detention facility, not that the detention facility already be assigned.").

During the telephone conference held on March 30, 2020, defense counsel retreated from their prior reliance on Section 3585, noting that Section 3143(a) uses the word "execution," not commencement. But case law discussing two related powers — staying a sentence and probation (the latter now repealed by Congress) — suggests that "execution" and commencement are effectively synonymous. Under the earlier probation statute, a district court was "authorized to 'suspend the imposition or execution of sentence and place the defendant on probation.'" *United States v. Ellenbogen*, 390 F.2d 537, 541 (2d Cir. 1968) (quoting 18 U.S.C. § 3651). But "once a defendant ha[d] commenced service of his prison sentence, . . . the district court [became] divested of jurisdiction in respect of the imposition of probation." *United States v. Asencio*, No. 88-CR-268 (CSH), 1990 WL 52288, at *1 (S.D.N.Y. Apr. 16, 1990). In addition, under Rule 38 of the Federal Rules of Criminal Procedure, a court "must stay a sentence of imprisonment" if the defendant "is released pending appeal." Fed. R. Crim. P. 38(b)(1). But if the defendant "is not released pending appeal," the Rule authorizes the Court only to "recommend to the Attorney General that the defendant be confined near the place of the

trial or appeal." Fed. R. Crim. P. 38(b)(2); *see United States v. Connelly*, No. 3:16-CR-125 (MPS), 2018 WL 6309052, at *3 (D. Conn. Dec. 3, 2018). These sources support the conclusion that Dr. Nkanga's sentence "executed" when the Court remanded him to the BOP's custody after sentencing. *See also United States v. Nash*, 51 F.2d 253, 255 (S.D.N.Y. 1931) ("So far as this court is concerned, they must be remanded to the custody of the United States marshal at once in order that the execution of the sentences may begin."). By contrast, Dr. Nkanga cites no authority for the proposition that "execution" means arrival at the facility to which a person is designated by the BOP.

In short, although the rational and right result is for Dr. Nkanga to be temporarily released from custody until circumstances improve, the Court is powerless at this point to bring about that result. The tragedy is that this would not have been the case had Dr. Nkanga pleaded guilty today, instead of last fall, as the Court would plainly have authority to grant him release — and would have granted him release — under Section 3145(c) based on the "exceptional reasons" posed by COVID-19 and to delay his surrender until the danger had passed. Nor would it have been the case had the Court fully appreciated the dangers of COVID-19 on March 12, 2020, when Dr. Nkanga was sentenced. If the Court (or counsel) had fully anticipated the circumstances that now exist, the Court likely would have adjourned Dr. Nkanga's sentencing until after the danger had passed and granted his release under Section 3145(c) in the interim. But as a result of the relative timing of these events, the Court is now deprived of the power to grant Dr. Nkanga the relief he seeks. And, thus, Dr. Nkanga faces weeks, if not months, in purgatory — or worse — at the MDC before he can be transferred to a medical

facility that is more appropriate for his conditions and more likely to keep him safe from COVID-19.[3]

Dr. Nkanga's case is a vivid illustration of why the dangers posed by COVID-19 to the imprisoned population cry out for action by Congress and the Executive Branch. For the most part, judges are limited to granting release in individual cases — an approach that is too slow and ad hoc to do much good against the unprecedented dangers posed by COVID-19. Moreover, as Dr. Nkanga's case makes plain, Congress has given judges only limited tools, and there are many inmates — certainly those such as Dr. Nkanga who have just been sentenced, and potentially the vast majority of inmates serving sentences previously imposed — for whom judicial relief under current law may be unavailable.[4] Only the political branches can do what this moment requires. The question is whether they will do so — and, if they do, whether their actions will be too late for Dr. Nkanga and other inmates like him.

The Clerk of Court is directed to terminate ECF Nos. 73 and 83.

SO ORDERED.

Dated: March 31, 2020
New York, New York

JESSE M. FURMAN
United States District Judge

---

[3] During the telephone conference held on March 30, 2020, the Government represented that it would seek to expedite Dr. Nkanga's designation and, if feasible, transfer. The Court urges the Government to do so.

[4] To be clear, the Court here addresses only the three arguments pressed by Dr. Nkanga. It does not address other arguments for relief, such compassionate relief under 18 U.S.C. § 3582(c) or temporary release by the BOP pursuant to 18 U.S.C. § 3622.