**PARKER AND CARMODY, LLP**
**ATTORNEYS AT LAW**
**850 THIRD AVENUE**
**14TH FLOOR**
**NEW YORK, N.Y. 10022**

DANIEL S. PARKER                                                                                    TELEPHONE: (212) 239-9777
MICHAEL CARMODY                                                                                FACSIMILE:   (212) 239-9175
CHRISTINA S. COOPER                                                                              DanielParker@aol.com

April 1, 2020

**By ECF and email**
Hon. Jesse M. Furman
United States District Judge
500 Pearl Street
New York, NY 10007

**United States v. Nkanga Nkanga**
**18 CR (713) JMF**

Dear Judge Furman:

Dr. Nkanga, by and through his undersigned counsel, respectfully moves for reconsideration of the Court's order of this morning denying temporary release (Dkt. No. 87).

In its ruling, the Court noted that, "If the Court (or counsel) had fully anticipated the circumstances that now exist, the Court likely would have adjourned Dr. Nkanga's sentencing until after the danger had passed and granted his release under Section 3145(c) in the interim.   But as a result of the relative timing of these events, the Court is now deprived of the power to grant Dr. Nkanga the relief he seeks.   And, thus, Dr. Nkanga faces weeks, if not months, in purgatory — or worse — at the MDC before he can be transferred to a medical facility that is more appropriate for his conditions and more likely to keep him safe from

1

COVID-19."

We ask the Court to reconsider its decision, and treat the defendant's motion for bail, as invoking the *writ of habeas corpus* codified at 28 U.S.C. § 2241. Thus construed, this Court has the power to grant Dr. Nkanga immediate release from the MDC because he is undeniably at great risk and particularly vulnerable to COVID-19, he is not being provided safe conditions and the situation cannot be remedied under current circumstances.

In making this request for reconsideration, we apologize to the Court for not making this argument sooner – as we believe it provides the Court with the power it seeks to take immediate action and steps to prevent a possible tragecy.

In advance, we thank Your Honor for your continuing concern and attention to this matter. Dr. Nkanga views it as affecting his life and not just his liberty.

"The standard for granting a motion for reconsideration is 'strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" *United States v. Gomez*, 2016 WL 2939163, at *2 (S.D.N.Y. May 19, 2016) (Cote, J.) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)). In this case, the Court (and counsel) overlooked the alternative legal authority that exist under 28 U.S.C. § 2241 for the relief sought herein.

**I. THE COURT SHOULD ORDER DR. NKANGA'S RELEASED UNDER 28 U.S.C. §2241**

Dr. Nkanga respectfully submits that he need not be placed at a high risk of death because the courts are powerless to intervene and the Executive Branch either cannot or chooses not to by opposing this application (if it does).

Section 2241(c)(3) authorizes courts to grant habeas corpus relief where a person is "in custody in violation of the Constitution or laws or treaties of the United States." The Second

2

Circuit has "long interpreted § 2241 as applying to challenges to the execution of a federal sentence, including such matters as . . . prison conditions." *Thompson v. Choinski* , 525 F.3d 205, 209 (2d Cir. 2008) (internal quotation marks omitted). This includes challenges to detention where conditions pose a threat to an inmate's medical wellbeing. See, *Roba v. United State*, 604 F.2d 215, 218-19 (2d Cir. 1979) (approving the use of Section 2241 to challenge a detainee's transfer where that transfer created a risk of fatal heart failure).   The Second Circuit's decision in *Roba* is instructive. In that case, the petitioner alleged that an imminent transfer from New York to face charges in California would create a substantial risk of death because of his precarious Heart condition. The Second Circuit held that there was Section 2241 jurisdiction to challenge his custody." Id. at 219.

Reflecting this reality, over the last several days, judges in this circuit and across the country have granted habeas petitions and ordered the release of persons who are incarcerated or being detained. See *Coronel, et al., v. Decker et al.,* 20 Civ. 2472 (AJN) (S.D.N.Y. Mar. 27, 2020) (granting release of four petitioners with medical conditions that render them particularly vulnerable to severe illness or death if infected by COVID-19 from immigration detention); *Arana v. Barr et al.,* 19 Civ. 7924 (PGG)(DCF) (S.D.N.Y. Mar. 27, 2020) (recommending "that, due to extraordinary circumstances brought about by the COVID-19 outbreak, which has apparently reached the jail where Petitioner is being detained, and by which he may be particularly seriously impacted as a result of underlying medical conditions, Petitioner be ordered released from [immigration] custody pending his bond hearing"); *Basank et al. v. Decker et al.,* 20 Civ. 2518 (AT) (S.D.N.Y. Mar. 26, 2020) (granting release of ten petitioners who "suffer[] from chronic medical conditions, and face[] an imminent risk of death or serious injury in immigration detention if exposed to COVID-19" from immigration detention); *United States v.*

*Stephens*, 15 Cr. 95 (AJN), 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020) (granting motion for reconsideration of defendant's bail conditions and releasing him from jail to home confinement, recognizing that incarcerated people may be at a heightened risk of contracting COVID-19); *Umana Jovel v. Decker et al.,* 20 Civ. 08 (GBD)(SN) (S.D.N.Y. Mar. 26, 2020) (granting emergency request for release of petitioner from immigration detention in light of the COVID-19 crisis); *People ex rel. Stoughton on behalf of Little et al. v. Brann*, Index No. 260154/2020 (Sup. Ct. Bronx Cty. Mar. 25, 2020) (releasing 106 individuals held at Rikers Island jail on parole violations who are particularly vulnerable to illness or death if infected by COVID-19); *People ex rel. Stoughton on behalf of Hogan et al. v. Brann*, (Sup. Ct. N.Y. Cty. Mar. 27, 2020) (releasing 16 individuals held at Rikers Island jail on pre-trial detention who were particularly vulnerable to illness or death due to COVID-19); *Xochihua - Jaimes v. Barr*, No. 18-71460 (9th Cir. Mar. 24, 2020) (ordering, sua sponte, that petitioner be immediately released from immigration detention "[i]n light of the rapidly escalating public health crisis" related to COVID-19); *Flores et al. v. Barr et al.,* 85 Civ. 4544 (C.D. Cal. Mar. 28, 2020) (granting a Temporary Restraining Order application requiring the Office of Refugee Resettlement and United States Immigrations and Customs Enforcement to immediately put in place measures to reduce the risk of COVID-19 infection for unaccompanied minors in their custody and ordering the defendants to show cause why an order should not issue requiring defendants to immediately release class members); *Zhang v. Barr et al.,* 20 Civ. 331 (C.D. Cal. Mar. 27, 2020) (granting Petitioner an immediate bond hearing in light of the "global pandemic by which delay in determining Petitioner's release exposes him to unnecessary risk"); *United States v. Garlock*, No. 18 Cr. 00418, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) (ordering, *sua sponte*, extension of convicted defendant's surrender date and noting "[b]y now it almost goes without saying that we should not

be adding to the prison population during the COVID-19 pandemic if it can be avoided"); *Castillo et al. v. Barr* , 20 Civ. 605 (C.D. Cal. Mar. 27, 2020) (ordering petitioners be released from immigration detention in light of COVID-19 and noting "the risk of infection in immigration detention facilities – and jails – is particularly high"); *In Re Extradition of Alejandro Toledo Manrique*, 19 Mj. 7105 (N.D. Cal. Mar. 19, 2020) (granting motion for release on bail of 74-year old subject of extradition request due to risks associated with remaining in custody during COVID-19 pandemic); *U.S.A. v. Barkman* , 19 Cr. 52 (D. Nev. Mar. 17, 2020) (suspending requirement that defendant report to prison to serve intermittent confinement due to risks associated with COVID-19); *United States v. Matthaei* , 19 Civ. 243 (D. Idaho Mar. 16, 2020) (granting convicted defendant additional time to self-surrender to prison in light of defendant's health problems, which place him at greater risk of complications of COVID 19); *Jimenez v. Cronen, et al.,* 18 Civ. 10225 (D. Mass. Mar. 26, 2020) (ordering release of petitioner from immigration detention due to COVID-19 concerns); *In re Request to Commute or Suspend County Jail Sentences*, Dkt. No. 084230 (N.J. Mar. 22, 2020) (ordering, based on the dangers posed by COVID-19, release of any person in New Jersey serving a county jail sentence as a condition of probation or as a result of a municipal court conviction).

In this case, the unconstitutional threat to Dr. Nkanga's health and life posed by being held at MDC is ongoing, not simply imminent. Every hour that he is held in the MCC places him at a significantly elevated risk of contracting coronavirus, and dying from coronavirus. For similar reasons, Judge Analisa Torres recently ordered the release of several individuals from federal immigration detention. See *Basank* , 2020 WL 1481503.

The government has no interest in maintaining an unconstitutional and unsafe prison environment, especially for an inmate deemed to be at risk of death. *Doe v. Kelly*, 878 F.3d 710,

718 (9th Cir. 2017) (the "government suffers no harm from an injunction that merely ends unconstitutional practices and/or ensures that constitutional standards are implemented") (quotation marks and citations omitted); see also *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 620 (S.D.N.Y. 2018); *Abdi v. Duke*, 280 F. Supp. 3d 373, 410 (W.D.N.Y. 2017). Releasing Dr. Nkanga temporarily – at least while he awaits designation – will potentially save his life while not compromising the asserted interest of the United States in seeing that he serves the term of imprisonment imposed by the Court. Dr. Nkanga would reside with his girlfriend at the residence where he was supervised on Pre-trial release under conditions of home incarceration. He will, however, report to the designated institution when it is appropriate and safe for him to do so.

## II. THE COURT SHOULD WAIVE THE EXHAUSTION REQUIREMENT FOR THE FILING A *WRIT OF HABEAS CORPUS*

Generally, a federal prisoner may not file a petition for a *Writ of Habeas Corpus* under § 2241 without first exhausting all available administrative remedies. *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir.2001). However, the exhaustion requirement applicable to § 2241 petitions is "prudential, not statutory," *Pimentel v. Gonzales*, 367 F.Supp.2d 365, 371 (E.D.N.Y.2005); see also *Arango Marquez v. INS*, 346 F.3d 892, 897 (9th Cir.2003) ("'District courts are authorized by 28 U.S.C. § 2241 to consider petitions for habeas corpus. That section does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.' " (quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir.2001))), and therefore may be waived when "'(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question,' " *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir.2003) (quoting *Able v. United States*, 88

F.3d 1280, 1288 (2d Cir.1996)); see also *Beharry*, 329 F.3d at 62 (holding exceptions to exhaustion requirement applicable when requirement "is judicially imposed instead of statutorily imposed").

*Legare v. U.S. Parole Comm'n*, No. 07-CV-4462 (JG), 2008 WL 53252, at *3 (E.D.N.Y. Jan. 3, 2008)

Under normal circumstances (and these are far from normal circumstances), a defendant can seek recourse through the courts after either (1) the BOP declines to file such a motion on his behalf; or (2) there has been of lapse of 30 days from the warden's receipt of the defendant's request, whichever is earlier.   Id.

Here a request would be moot because as the Court is aware, there is no movement of prisoners within the Federal Bureau of Prisons, barring a very few limited exceptions, and the defendant has not yet been designated.

The Court need not and should not wait for Dr. Nkanga to exhaust his administrative remedies as this would almost assuredly exacerbate an already impending public health catastrophe in the jails and prisons, while posing a particular danger to this individual.   See generally, *Washington v. Barr* 925 F.3d 109, 120–21 (2d Cir. 2019) ("[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile.").

Federal courts have found that it is appropriate to hear applications of this nature prior to the expiration of 30 days (or the exhaustion of administrative remedies) where there is an emergency.   See *United States v. Agustin Francisco Huneeus* , No. 19 Cr. 10117 (IT), ECF Docket No. 642 (D. Mass. Mar. 17, 2020) (granting defendant's emergency motion based on COVID-19); see also *United States v. James Arberry*, No. 15 Cr. 594 (JPO), ECF Docket No. 84 (S.D.N.Y. Nov. 12, 2019) (hearing and granting emergency compassionate release application of

prisoner with cancer). This accords with general administrative law principles and the exception to administrative exhaustion requirements in numerous statutory schemes. See, e.g., *Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993) (waiving requirement to exhaust administrative remedies where "exceptional circumstances of peculiar urgency are shown to exist") ( citing *Granberry v. Greer*, 481 U.S. 129 (1987)); *Washington v. Barr*, 925 F.3d 109, 119 (2d Cir. 2019) (finding that administrative exhaustion requirements can be waived if delay would cause irreparable injury); *Maxwell v. New York Univ.*, 407 F. App'x 524, 527 (2d Cir. 2010) (same). "[A]pplication of the exhaustion doctrine is 'intensely practical'" and should "be guided by the policies underlying the exhaustion requirement." *Bowen v. City of New York*, 476 U.S. 467, 484 (1986) (quoting Mathews v. Eldridge , 424 U.S. 319, 332 n.11 (1976)). Those policies were articulated by the Supreme Court in *Weinberger v. Salfi*, 422 U.S. 749 (1975):

Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

422 U.S. at 765.

Conducting an "intensely practical" analysis of these policies in the context of the Social Security Act's exhaustion requirement, the Supreme Court held in *Bowen* that courts "should be especially sensitive" to irreparable and severe medical harm resulting for blind adherence to a statutory exhaustion requirement, particularly "where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the procedure they should have been afforded in the first place." 476 U.S. at 484 (discussing 42 U.S.C. § 405(g)); see also *Rafeedie v. I.N.S.*, 880 F.2d 506 (D.C. Cir. 1989) (Ginsburg, J., concurring) ("As I see it, a

8

statutory exhaustion requirement, unless Congress explicitly declares otherwise, does not impose an absolute, unwaivable limitation on judicial review; instead, it sets a condition that may be excused when insistence on exhaustion would threaten grave harm to the party seeking review and would not sensibly serve the purposes Congress envisioned in establishing that condition.").

Giving the BOP time to decide administrative applications for a COVID-19 *Writ of Habeas Corpus* or an application for compassionate release predicated on COVID-19 concerns would not "afford the parties and the courts the benefit of [the BOP's] experience and expertise." *Salfi*, 422 U.S. at 765. The BOP already has provided its "expert" input on such requests: its "COVID-19 Action Plan" lacks any consideration whatsoever of compassionate release. See *Federal Bureau of Prisons COVID-19 Action Plan*, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp. And the MCC Legal Department has confirmed to counsel that it has no institution-specific requirements for requesting compassionate release and no specific procedure in place for compassionate release during this pandemic. Thus, it would be futile to force defendants to exhaust their administrative remedies—at the cost of their health and, potentially, their lives.

## CONCLUSION

This Court should enter an order directing the Bureau of Prisons to release Dr. Nkanga from the custody of the Bureau of Prisons forthwith and direct that he be placed on home detention.

Respectfully submitted,

/s/
Daniel S. Parker
Parker and Carmody, LLP
850 Third Ave., 14th Floor

New York, NY 10022
DanielParker@aol.com
Tel: (212) 239-9777

Joshua J. Horowitz
Horowitz Tech Law P.C.
350 Fifth Avenue, Suite 7610
New York, New York 10118
Joshua.horowitz@techlawny.com