

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 2, 2020

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Nkanga Nkanga*, 18 Cr. 713 (JMF)

Dear Judge Furman:

    The Government respectfully submits this letter in opposition to the defendant's third motion to be released from custody, which he now makes pursuant to 18 U.S.C. §§ 3582(c) and 3622, seeking a reduction in sentence to time served with supervised release including home confinement or, in the alternative, a court order directing the Federal Bureau of Prisons ("BOP") to temporarily furlough him for thirty days. (Dkt. 89).[1] The Government is extremely sensitive to the very real concerns at stake, but because the defendant again seeks release pursuant to statutes that do not provide the Court authority to grant the requested relief, the defendant's motion must be denied, as discussed further below.

## I.   REDUCTION IN SENTENCE PURSUANT TO SECTION 3582(c)(1)(A)(i)

### A.  Applicable Law

    Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court "may not modify a term of imprisonment once it has been imposed except" as provided by statute. As relevant here:

    [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to

---

[1] In order to fashion a legal sentence that granted the defendant's request for "home confinement," the Court would have to resentence the defendant to time served, to be followed by a period of supervised release including a special condition of home confinement. As discussed below, such a sentence reduction would not appropriately capture the severity of the defendant's conduct. The BOP "home confinement" program under the First Step Act, which is a discretionary program for inmates nearing the end of their sentences, is unrelated to the defendant's instant request and, in any event, similarly committed to BOP discretion as described below.

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.* As described in the Senate Judiciary Committee Report for the initial legislation behind Section 3582(c)(1)(A), this provision is intended to apply "to the unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner." S. Rep. No. 98-225, at 121 (1983).

## 1.   Mandatory Exhaustion of Administrative Remedies

*First*, the statute *conditions* the possibility of a sentence modification on (i) a motion to the Court from the BOP or (ii) defendant's exhaustion of all administrative appeals from the BOP's refusal to bring a motion on his behalf or the lapse of 30 days after such a request by the defendant to the BOP. Unlike situations in which administrative exhaustion constitutes a prudential overlay created by the courts that can be waived, the language of Section 3582(c) makes clear that a court cannot act unless the requirement is satisfied. The statute is clear that unless the enumerated requirements are met, a court "*may not* modify a term of imprisonment." 18 U.S.C. § 3582(c) (emphasis added). *See Poole v. Mukasey*, 522 F.3d 259, 263 (2d Cir. 2008) ("Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them." (quoting *Bastek v. Fed. Crop Ins.*, 145 F.3d 90, 94 (2d Cir. 1998))). It is critical, in this context, to note that Section 3582(c)'s exhaustion requirement is statutory, and thus is not the sort of judicially-crafted exhaustion requirement that "remain[s] amenable to judge-made exceptions." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). By significant contrast, *statutory* exhaustion requirements "stand[] on a different footing." *Id.* There, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Id.* Thus, where a statute contains mandatory exhaustion language, the only permissible exceptions are those contained in the statute. *Id.*

Judge Cote recently considered this precise question, holding that Section 3582 set forth a statutory exhaustion requirement that must be "strictly enforc[ed]." *United States v. Monzon*, No. 99 Cr. 157 (DLC), 2020 WL 550220 (S.D.N.Y. Feb. 4, 2020) (citing *Theodoropoulos v. I.N.S.*, 358 F.3d 162, 172 (2d Cir. 2004) ("[A]s a general rule, courts are required to strictly enforce statutory exhaustion requirements.")). After thoroughly discussing the law surrounding exhaustion requirements and whether and when they can be waived by courts, Judge Cote held that because the BOP had not brought the Section 3582 motion at issue and the petitioner had not exhausted his administrative remedies, the Court was statutorily barred from granting his request for a sentence reduction. *Id.* at 5; *see also United States v. Miralishvili*, No. 14 Cr. 810 (CM), ECF No. 501 (S.D.N.Y. Apr. 1, 2020) (declining to waive the exhaustion requirement); *United States v. Demaj*, No. 16 Cr. 289 (ALC) (S.D.N.Y. Apr. 2, 2020) (denying motion for compassionate release on exhaustion grounds).

There are good reasons why Congress chose to include the exhaustion requirement. The BOP, consistent with its historic practice under the statute, appropriately and necessarily evaluates numerous factors and solicits input from relevant offices before making a final determination on a request for compassionate release. Prior to approving a request for a reduced sentence, pursuant to agency policy and Department regulation, the BOP conducts a thorough evaluation of the circumstances underlying the request, including gathering and assessing all pertinent institutional, medical, and other personal records. The review is conducted by the warden of the institution where the inmate is confined; the BOP General Counsel; the BOP Medical Director and/or the Assistant Director of the Correctional Programs Division, depending on the nature of the request; and ultimately the Director of the BOP. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The General Counsel also solicits the opinion of the United States Attorney in the district in which the inmate was sentenced. 28 C.F.R. § 571.62(a)(2). Finally, where an inmate's term of imprisonment is to be followed by a period of supervised release, the agency contacts the United States Probation Office for the district to which the inmate would be released to ensure the proposed release plan required by 28 C.F.R. § 571.61(a)(2) is appropriate and the location to which the inmate would be released comports with the terms of the inmate's supervised release. *See* BOP Program Statement 5050.50 at 14. These reviews are conducted to ensure that the request by the inmate does, indeed, reflect extraordinary and compelling circumstances; that the inmate's early release would not unduly minimize the severity of the inmate's offense; and that the inmate's early release would not unduly jeopardize public safety, which are all factors that must be taken into account by the Court under Section 1B1.13 and the BOP program statement. In all cases, BOP endeavors to complete this review without undue delay, and in the case of requests made on the basis of the inmate's medical condition, the agency expedites the review. *See* 28 C.F.R. § 571.62(c). In cases where the request is denied by the warden, the inmate is allowed to appeal that denial through the BOP's administrative remedy process. 28 C.F.R. § 571.63(a). This ensures consistency across all prisoners seeking early release on compassionate grounds.

## 2.  Merits Definition of "Extraordinary and Compelling Reasons"

*Second*, although the Sentencing Guidelines are normally only advisory, because the statute requires the reduction to be "consistent with" the applicable Guidelines policy statements, they have been incorporated into the statute by reference and are therefore binding prerequisites. *See Dillon v. United States*, 560 U.S. 817, 827 (2010); 28 U.S.C. § 994(t); *accord, e.g.*, *United States v. Ebbers*, No. 02 Cr. 1144 (VEC), 2020 WL 91399 (S.D.N.Y. Jan. 8, 2020).

The applicable Sentencing Commission policy statement provides a definition of "extraordinary and compelling reasons," *see* U.S.S.G. § 1B1.13 Application Note 1, and includes the additional requirement that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g) [the Bail Reform Act]," U.S.S.G. § 1B1.13(2). In cases in which the asserted ground for compassionate release is the defendant's medical condition, "extraordinary and compelling reasons" is defined as follows:

     (A) Medical Condition of the Defendant.—

        (i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

        (ii)    The defendant is—

              (I)     suffering from a serious physical or medical condition,

              (II)    suffering from a serious functional or cognitive impairment, or

              (III)   experiencing deteriorating physical or mental health because of the aging process,

             that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 Application Note 1.  A catchall provision also allows the Director of the BOP to determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  *Id.* Application Note 1(D).  But the Director of the BOP has not made such a determination in this case.

     BOP has adopted a Program Statement establishing more detailed criteria implementing the above standards governing when it will seek compassionate release on behalf of an inmate.[2] *See* BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence:  Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf.  While not binding on this Court, the Program Statement should be given such weight as the Court deems appropriate in light of its persuasiveness.  *See Reno v. Koray*, 515 U.S. 50, 61 (1995) (BOP program statements, which do not require notice and comment, are entitled to "some deference" where they reflect a "permissible construction of the statute" (internal quotation marks omitted)); *see generally Skidmore v. Swift & Co.*, 323 U.S. 134 (1944); *United States v. Mead Corp.*, 533 U.S. 218 (2001).  Where the asserted grounds for compassionate release is a debilitating medical condition (as opposed to, for example, a terminal diagnosis), Program Statement 5050.50 requires that (1) the inmate suffers from "an

---

[2] Prior to adoption of the First Step Act in late 2018, a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) could be filed only by the Director of the Bureau of Prisons, so for practical purposes the Program Statement served as a gateway set of requirements before an inmate could receive compassionate release.  As amended, the statute now permits inmates to file motions for compassionate release directly with the Court.

incurable, progressive illness" or "a debilitating injury from which [the inmate] will not recover," and (2) the inmate is either (A) "completely disabled, meaning that the inmate cannot carry on self-care and is totally confined to a bed or chair," or (B) "capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours."  Program Statement 5050.50, at 5.

As the proponent of the motion, the defendant bears the burden of proving "extraordinary and compelling reasons" exist under the above criteria to justify early release.  *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

## B.  Discussion

The defendant's motion for a reduction in sentence to time served to be followed by supervised release including home confinement must be denied.

*First*, the defendant concedes that he has not exhausted his administrative remedies, because he emailed his request for compassionate release to the BOP the same day he filed it with this Court.  Plainly, he has failed to satisfy the statutory requirements on which this Court's power to act is conditioned.  By styling his request for compassionate relief as an "emergency" in an effort to skirt the exhaustion requirement would allow the defendant to make an end run around the process envisioned and mandated by Congress.  That process is particularly important at a time when the BOP is facing an influx of similar requests, and there is a pronounced need for the orderly and consistent resolution of these requests on the timeline that Congress enacted in the statute.  Accordingly, this Court cannot consider the motion at the present time.

*Second*, even if the defendant had met the threshold exhaustion requirement (which he has not), and even assuming that his medical condition met the requirements set forth in U.S.S.G. § 1B1.13 Note 1(a), this Court should still deny the defendant's request for a reduction in sentence to time served because the same Section 3553(a) factors that the Court considered in imposing the original sentence three weeks ago continue to justify that sentence today.   The defendant committed an incredibly serious offense, and he already received a substantial downward variance in light of his health issues—from the Guidelines-recommended sentence of 108 to 135 months, to the sentence of 36 months that the Court imposed.   The reduction now requested by the defendant to time served after serving only approximately five months of his 36-month sentence of imprisonment would entirely fail to satisfy any of the purposes of sentencing and would not be appropriate.  *See, e.g.*, *United States v. Credidio*, No. 19 Cr. 111 (PAE), ECF No. 62 (S.D.N.Y. Mar. 30, 2020) (denying motion for compassionate release and reduction of sentence to home confinement in light of COVID-19 pandemic for 72-years old defendant sentenced in Feb. 2020 to 33 months' imprisonment because lengthy term of imprisonment was required for reasons stated at sentencing); *accord id.* ECF No. 66 (S.D.N.Y. Apr. 2, 2020) (denying § 2241 habeas petition in concluding that court was without power to act, while noting the availability of various remedies within the BOP and urging the defendant to seek those remedies).  The 36-month sentence the Court originally imposed should stand.

Accordingly, the defendant's motion for a reduction in sentence is procedurally barred, and in any event he has failed to meet his burden of demonstrating that a reduction is warranted. The motion should be denied.

## II.   BOP ADMINISTRATIVE FURLOUGH PURSUANT TO SECTION 3622

The defendant's request for an administrative furlough pursuant to 18 U.S.C. § 3622 must similarly be denied.

Section 3622 states that "[t]he Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period if such release appears to be consistent with the purpose for which the sentence was imposed . . . if such release otherwise appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions, to . . ." engage in one of a series of specifically listed activities including visiting sick relatives, attending family funerals, or participating in a work-release program, among others.

This provision, however, vests sole discretion over any such furloughs with the BOP, as the legislative history makes plain. *See* S. Rep. 98-225, at 143 (1983) ("The Committee does not intend that work release under this subsection be expanded to the extent that it develops into a device for early release from prison.... [T]emporary release under subsection[ ] ... (c) is within the discretion of the Bureau of Prisons; there is no absolute right to work release or other outside privileges."). Notwithstanding that the defendant claims to have identified no cases addressing this issue, multiple Courts of Appeals have concluded that the judicial branch has no authority with respect to administrative furloughs under Section 3622, and the Government has not identified any decision to the contrary. *See, e.g.*, *In re Radcliff*, No. 12-1444, 2012 WL 5974172 (10th Cir. Nov. 28, 2012) ("The statute could not be clearer as to whom it vests with the authority to grant temporary release . . . it is up to the BOP, not the district court, to consider whether, in its discretion, Mr. Radcliff should be granted temporary release under § 3622(a)."); *United States v. Premachandra*, No. 95-2871, 1996 WL 102567 (8th Cir. Mar. 8, 1996) ("We agree with the district court that 18 U.S.C. § 3622 vests authority to grant medical furloughs with the Bureau of Prisons (BOP), not the federal courts."); *McMullen v. Hambrick*, No. 93-5089, 1993 WL 302197 (6th Cir. Aug. 6, 1993) ("[T]he Bureau of Prisons is charged with the discretion over whether to temporarily release a prisoner for the purpose of attending a relative's funeral . . . [the district court] was without authority to order the release of McMullen for the purpose of attending a funeral.").

Moreover, the Supreme Court has held that courts have no authority with respect to other programs delineated in adjacent statutory sections under the same subchapter governing BOP administration of sentences. *See Tapia v. United States*, 564 U.S. 319, 329-31 (2011) (noting that BOP has "plenary control" over prisoner designation under 18 U.S.C. § 3621 and drug treatment programs under 18 U.S.C. §§ 3621 and 3624). And Section 3625 expressly eliminates judicial review under the Administrative Procedure Act of any decision made by BOP under, among other statutes, Section 3622, further evidencing Congress's intent that these matters are vested within the sole discretion of the BOP.

Accordingly, this Court has no authority to order release under Section 3622.   The defendant's motion must be denied.

## III.   CONCLUSION

For the reasons set forth above, the defendant's third motion for release from prison must be denied.[3]

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by:   ____/s/_____
Jacob R. Fiddelman
Cecilia E. Vogel
Assistant United States Attorneys
(212) 637-1024 / 1084

cc:   Daniel S. Parker, Esq. (by ECF)
Joshua Horowitz, Esq. (by ECF)
Benjamin Silverman, Esq. (by ECF)

---

[3] Pursuant to the Court's suggestion, the Government has engaged in efforts with the BOP to expedite the defendant's designation to a long-term facility.  The Government has been informed that the defendant will likely be designated in the next several days.  It is uncertain as to how quickly thereafter the defendant will be moved to the designated facility, but the Government intends to continue its efforts to accomplish that result.  We will also inquire with the warden of the MDC as to the expected timeline for decision on the defendant's requests for compassionate release and/or a furlough.