*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 6, 2020

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Nkanga Nkanga*, 18 Cr. 713 (JMF)

Dear Judge Furman:

    The Government submits this letter in response to the Court's April 3, 2020 Order directing the parties to submit supplemental briefing addressing the questions set forth therein. (Dkt. 104, the "April 3 Order"). For the reasons set forth below, as well as in the Government's April 2, 2020 letter (Dkt. 97), the Government respectfully submits that this Court should deny defendant Nkanga Nkanga's motion for a sentence reduction pursuant to 18 U.S.C. § 3582 or a furlough pursuant to 18 U.S.C. § 3622.

    Personnel from the Federal Bureau of Prisons ("BOP") are working to provide an affidavit pursuant to the April 3 Order. The Government expects to file that affidavit by close of business today.

**I.   THE COURT DOES NOT HAVE AUTHORITY TO EXCUSE THE DEFENDANT'S FAILURE TO EXHAUST**

    **A.**  *Mathews v. Eldridge* **and its Progeny Do Not Apply to 18 U.S.C. § 3582(c)**

    In the April 3 Order, the Court inquired whether it had the authority to excuse the defendant's failure to exhaust for the reasons described in *Mathews v. Eldridge*, 424 U.S. 319 (1976) and *Bowen v. City of New York*, 476 U.S. 467 (1986). Both cases are inapposite. In each case, the Court considered a provision of the Social Security Act providing that a claimant could bring a civil action challenging a decision by the Secretary of Health, Education and Welfare only after "a final decision of the Secretary made after a hearing." 42 U.S.C. § 405(g). The Court construed this to contain two requirements: (1) a non-waivable, "jurisdictional" element that a claim shall have been brought before the Secretary, and (2) a waivable element that the remedies prescribed by the Secretary be exhausted. *Eldridge*, 424 U.S. at 328. In *Eldridge*, the claimant argued that the Due Process Clause of the Fifth Amendment requires that prior to termination of Social Security disability benefit payments the recipient be afforded an opportunity for an evidentiary hearing. In evaluating whether the denial of his claim was sufficiently "final" so as to

"satisfy the exhaustion requirement," the Court noted that (1) his Due Process claim was entirely "collateral" to his substantive claim of entitlement, and (2) his claim to a predeprivation hearing as a matter of constitutional right "rests on the proposition that full relief cannot be obtained at a postdeprivation hearing." *Id.* at 330-31. The Court thus concluded that the denial of the claimant's request for benefits "constitutes a final decision" for purposes of the exhaustion requirement. *Id.* at 332. Thus, *Eldridge* did not excuse an exhaustion requirement; it found it to have been satisfied. *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 15 (2000) ("*Eldridge*, however, is a case in which the Court found that the respondent *had followed* the special review procedures set forth in § 405(g), thereby *complying with*, rather than *disregarding*, the strictures of § 405(h).").

In *Bowen*, the Court stated that *Eldridge* established a two-part test that is satisfied when "the claims were collateral to any claim for benefits, and the harm imposed by exhaustion would be irreparable." 476 U.S. at 476. The Court held that the particular claims in that case also satisfied the *Eldridge* test, and thus exhaustion was not required. *Id.* at 483-84. However, the Court went on to use language suggesting not that the requirement of a "final decision" (and thus the exhaustion requirement) had been *satisfied*, but rather that it could be "excused" under the circumstances set forth in *Eldridge*, as well as when a court deems appropriate "as guided by the policies underlying the exhaustion requirement." *Id.* 485. These statements in *Bowen*, which go beyond *Eldridge* and are arguably dicta, are in stark tension with *Ross v. Blake*, 136 S. Ct. 1850 (2016) and other more recent Supreme Court precedents. Indeed, they set forth precisely the sort of "freewheeling approach to exhaustion" that the Supreme Court has since repudiated. *Ross*, 136 S. Ct. at 1350.

As the Court has made clear numerous times since *Eldridge* and *Bowen*, courts are "not free to rewrite the statutory text" when Congress has "barred claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 111 (1993). And where Congress has mandated exhaustion, the Court has rejected attempts to rely on the policies of administrative exhaustion, like those cited in *Bowen*, or the notion of a futility requirement. *See, e.g.*, *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).

Thus, particularly in light of subsequent precedent, *Eldridge* and *Bowen* stand at most for the proposition that the specific statutory exhaustion requirement at issue in those cases can be excused by the court where the two-part *Eldridge* test is satisfied. But by no means do they stand for the proposition that *all* statutory exhaustion requirements may be excused, let alone one as unambiguous as Section 3582(c). Indeed, when the Supreme Court recently reiterated the two-part *Eldridge* test, it emphasized that exhaustion schemes should be interpreted "with a regard for the particular administrative scheme at issue" and that the SSA is "unusually protective of claimants." *Smith v. Berryhill*, 139 S. Ct. 1765, 1774, 1776 (2019). *Smith* and *Ross* both make clear that the analysis of whether any given statutory exhaustion provision allows for exceptions is unique to that statute. While one statute's text and history may give judges leeway to make exceptions, another may not. *Ross*, 136 S. Ct. at 1858 n.2; *see also Smith*, 139 S. Ct. at 1776; *Illinois Council on Long Term Care, Inc.*, 529 U.S. at 14 (while interpreting one statutory exhaustion provision, rejecting reliance on a case interpreting a different statutory exhaustion provision because the outcome "turned on the different language of that different statute").

**B. The Defendant's Motion is Not Collateral**

The defendant is not seeking relief collateral to the relief sought from the BOP. To the contrary, the defendant seeks from the Court exactly the same relief as he does from the BOP: compassionate release. Unlike the plaintiffs in *Mathews* and its progeny, the defendant is not challenging any agency policy or asserting a constitutional claim. Thus, unlike the claimants in *Mathews* and *Bowen*, the defendant's claims before this Court are not collateral to the claims he is raising with the BOP—they are one and the same.[1] Accordingly, the defendant's motion is not collateral, and the *Mathews* line of cases does not apply.

**C. The Purposes of Exhaustion Are Served by Enforcing the Exhaustion Requirement Here**

In recent weeks, numerous defendants around the country have cited the unusual circumstances presented by COVID-19 as a basis for compassionate release and have argued that the exhaustion requirement should be excused. The only court of appeals to have addressed the question has rejected the argument and required exhaustion. *See United States v. Raia*, __ F.3d __, No. 20-1033, 2020 WL 1647922 (3d Cir. Apr. 2, 2020). In *Raia*, the Third Circuit recognized the serious concerns presented by COVID-19, but held that, in light of these concerns, as well as the BOP's statutory role and its "extensive and professional efforts to curtail the virus's spread, . . . strict compliance with Section 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.* at *2. The vast majority of district courts have also required exhaustion despite COVID-19 claims.[2] These decisions are consistent with the plain language of Section 3582(c).[3]

---

[1] Thus, even if *Mathews* and *Bowen* were applicable here, the two-part test set forth therein would not be satisfied.

[2] *See United States v. Hernandez*, No. 18 Cr. 834 (PAE) (S.D.N.Y. Mar. 25, 2020) (Dkt. No. 440); *United States v. Gileno*, No. 19 Cr. 161, 2020 WL 1307108, *3 (D. Conn. Mar. 19, 2020); *United States v. Eberhart,* No. 13 Cr. 313 (PJH), 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Garza*, No. 18 Cr. 1745, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020); *United States v. Williams*, No. 15 Cr. 646, 2020 WL 1506222 (D. Md. Mar. 30, 2020); *United States v. Oliver*, No. 16 Cr. 485, 2020 WL 1505899 (D. Md. Mar. 30, 2020); *United States v. Zywotko*, No. 19 Cr. 113, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); *United States v. Clark,* No. 17 Cr. 85 (SDD), 2020 WL 1557397 (M.D. La. Apr. 1, 2020); *United States v. Carver*, No. 19 Cr. 6044, 2020 WL 1604968 (E.D. Wa. Apr. 1, 2020). *But see United States v. Perez*, No. 17 Cr. 513 (AT), 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020); *United States v. Colvin*, No. 19 Cr. 179 (JBA), 2020 WL 1613943 (D. Conn. Apr. 2, 2020).

[3] Inmates like the defendant may be able to obtain alternative forms of relief from BOP even while exhausting their remedies as required under Section 3582(c)(1)(A). For example, on April 3, 2020, the Attorney General instructed the BOP to immediately review for home confinement all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention (the "CDC"), starting with those incarcerated at those facilities where COVID-19 is materially affecting operations—FCI Oakdale, FCI Danbury, and FCI Elkton. While the MDC is not

Case 1:18-cr-00713-JMF   Document 110   Filed 04/06/20   Page 4 of 9

Page 4

To be sure, COVID-19 presents unusual circumstances, in which compassionate release decisions should be made expeditiously.[4] But the text of Section 3582 contains no exigency exception for such circumstances, and indeed the text affirmatively refutes the availability of such an exception in two respects. First, while many statutory exhaustion provisions require exhaustion of all administrative remedies before a claim is brought in court, Section 3582 provides an alternative: exhaustion of all administrative rights *or* the lapse of 30 days from the warden's receipt of the inmate's request for compassionate release, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). This alternative suggests that the Congress recognized that even if compassionate release requests cannot always await the full administrative process to be completed, the BOP should have at least 30 days to act on such a request. Second, in cases presenting the most urgent circumstance – inmates diagnosed with a terminal illness—Section 3582(d) requires the BOP to process any application for compassionate release in 14 days. That the Congress allowed 14 days to process the claims of even a terminally ill inmate suggests that it could not have intended to allow a shorter period—which excusing exhaustion would provide—in a case, such as this, where the risk to the inmate, while serious, remains potential.

## II.  TITLE VII'S REQUIREMENT THAT AN INDIVIDUAL PETITION THE EEOC IS NOT APPLICABLE HERE

In the April 3 Order, the Court next asked whether it could look to certain provisions of Title VII's when evaluating the question of exhaustion here. The procedures for an individual seeking relief under Title VII, however, are inapposite. That is because while 18 U.S.C. § 3582(c)(1)(A) explicitly requires that exhaustion requirements are met before motions for compassionate release may be considered by the district court, Title VII does not contain similar mandatory language. Pursuant to 29 C.F.R. §1601.28(e)(1), an aggrieved individual may obtain a notice of right-to-sue from the Equal Employment Opportunity Commission (EEOC) authorizing them to bring a civil action under Title VII. Neither Title VII nor its implementing regulations

---

included in that list—because, as noted before, the incidents of COVID-19 at the MDC are quite limited—the memo instructs the warden at any "similarly situated BOP facilities" to continue that review. (Memo from the Attorney General dated April 3, 2020 (attached hereto as Exhibit A)). The memo is clear that, in conducting this review, "time is of the essence." (*Id.* at 2). However, this review must be done with careful thought, in consideration of the interests of the public, law enforcement, and defendants alike, as "[t]he last thing our massively over-burden police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates." (*Id.* at 3).

[4] In the course of responding to compassionate release motions made during the current COVID-19 pandemic, the Government has, in limited circumstances, chosen not to assert the exhaustion defense for defendants with the most compelling cases for compassionate release. For the reasons previously set forth in the Government's April 2, 2020 letter (Dkt. 97), including the seriousness of the offense and the fact that the defendant has served only five months of his 36-month sentence, the Government has elected not to waive the exhaustion requirement in this case.

explicitly state that a district court *must not* consider a claim brought under Title VII if the aggrieved individual has not obtained such a notice.

Therefore, the Second Circuit has held that a party's failure to obtain a notice of right-to-sue for their Title VII claim may be waived by the opposing party or a district court under certain circumstances. *See, e.g.*, *Francis v. City of New York*, 235 F.3d 763, 767 (2d Cir. 2000) (holding that "presentation of a Title VII claim to the EEOC is not a jurisdictional prerequisite, but only a precondition to bringing a Title VII action that can be waived by the parties *or the court*"); *Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir. 1999) (same); *Rein v. McCarthy*, No. 19-842, 2020 WL 1042220, at *1 (2d Cir. Mar. 4, 2020) (summary order) (same).

But this case law has no bearing where, as here, a statute explicitly mandates that administrative exhaustion is required before a district court may consider a motion. That distinction is well-established. The Supreme Court has directed that "[w]here Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan,* 503 U.S. 140, 144 (1992) (internal citations omitted); *see also Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998) (noting when "the statute at issue explicitly mandates exhaustion as a prerequisite to judicial review, it must be enforced"); *Ross*, 136 S. Ct. at 1857 (noting when statute contains mandatory exhaustion language, the only permissible exceptions are those contained in the statute). Only in the absence of an explicit statutory exhaustion requirement, may courts exercise discretion and "balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146; *see also id.* at 152 ("*Because Congress has not required exhaustion* . . . we turn to an evaluation of the individual and institutional interests at stake in this case." (emphasis added)); *Portela-Gonzalez v. Secretary of the Navy,* 109 F.3d 74, 77 (1st Cir.1997) ("[E]xhaustion of administrative remedies is absolutely required if explicitly mandated by Congress.").

Indeed, in *Bastek v. Federal Crop Ins. Corp.*, the Second Circuit considered a statute governing administrative appeals falling under the Federal Crop Insurance Act which states, in relevant part, that "[n[otwithstanding any other provision of law, a person *shall exhaust* all administrative appeal procedures established by the Secretary [of Agriculture] or required by law *before the person may bring an action in a court of competent jurisdiction*." 145 F.3d at 93 (quoting 7 U.S.C. § 6912(e)). The Second Circuit noted that, faced with unambiguous statutory language requiring exhaustion of administrative remedies, "[w]e are not free to rewrite the statutory text." *Id.* at 94 (quoting *McNeil v. United States,* 508 U.S. 106, 111 (1993)). Because the plaintiffs in that case had not exhausted such remedies, the Second Circuit concluded that "their failure to do so deprived them of the opportunity to obtain relief in the district court." *Id.*

Similarly, here, when a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment. 18 U.S.C. § 3582(c)(1)(A)(i). Section 3582(c)(1)(A)'s exhaustion requirement is mandatory and therefore may not be waived by a court in its discretion. *See id.* The case law applying the procedures under which a Title VII claim may be brought, therefore, is inapposite. *See also Ross*, 136 S. Ct. at 1858 n.2 (one statute's text may give leeway to make exceptions, while

another may not); *Smith*, 139 S. Ct. at 1776 (exhaustion statutes must be interpreted "with a regard for the particular administrative scheme at issue").

### III. THE COURT DOES NOT HAVE POWER TO "REDUCE" A TERM OF IMPRISONMENT AS SET FORTH IN THE COURT'S APRIL 3 ORDER

The Government respectfully submits that the relief about which the Court is inquiring—namely, "reducing" a term of imprisonment at the beginning of the term, rather than the end—is not possible under Section 3582(c). The Government's research has uncovered no case in which a court ordered such a result under this statute. The Government respectfully submits that the posited relief would be plainly inconsistent with the language of the statute, the purpose of compassionate release, and the case law interpreting Section 3582(c).

Section 3582(c) states that a court "may not modify a term of imprisonment once it has been imposed," except that, as relevant here, a court "may *reduce* the term of imprisonment" if the requirements of compassionate release are satisfied. 18 U.S.C. § 3582(c)(1)(A). The same language is used in Section 3582(c)(2), the provision that governs when the United States Sentencing Commission has retroactively lowered a Sentencing Guidelines range; if certain requirements are met, a court "may reduce the term of imprisonment" imposed on such a defendant. In that context, the Supreme Court has explained that a court's authority under Section 3582(c)(2) is "limited" to the power to "reduce" a term of imprisonment. *Dillon v. United States*, 560 U.S. 817, 825 (2010). "By its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding. Instead, it provides for the modification of a term of imprisonment by giving courts the power to 'reduce' an otherwise final sentence in circumstances specified by the Commission." *Id.* (internal quotation marks and alterations omitted); *see United States v. Urso*, 2019 WL 5423431, at *1 (E.D.N.Y. Oct. 23, 2019) (holding that Section 3582(c) "authorizes the court to modify a *term* of imprisonment, it does not authorize the court to alter the method of incarceration.") The Government respectfully submits that ordering the defendant temporarily released to home confinement for a period to be followed by incarceration for however long is then left on the defendant's sentence would constitute imposition of a new sentence, rather than reducing a sentence, and is not legally possible. Such relief would also be inconsistent with the plain purpose of the compassionate release regime, which is to terminate early the incarceratory portion of a sentence for an inmate whose health has deteriorated sufficiently severely or whose life circumstances have otherwise changed in certain delineated ways. To the extent the Court's proposal deviates from this understanding of Section 3582(c), it is more accurately viewed as a functional grant of bail, or a grant of a furlough, or a court-ordered re-designation of the location at which a sentence will be served—each of which this Court is without authority to order.

At least one judge of this Court has recently concluded that such relief is not possible. *See United States v. Credidio*, No. 19 Cr. 111 (PAE), ECF No. 66 (S.D.N.Y. Apr. 2, 2020) (concluding, in ruling on motion for compassionate release under Section 3582(c) and/or habeas corpus under Section 2241, that court is "powerless to order Ms. Credidio temporarily released from custody until circumstances improve," but observing that BOP does have such authority including furloughs under Section 3622, among other grounds).

Accordingly, the Government respectfully submits that the posited relief cannot be granted under Section 3582(c).

## IV. THE BOP MAY EXERCISE ITS DISCRETION IN GRANTING FURLOUGHS

Pursuant to the language of Section 3622, a single furlough may not exceed 30 days in length. In the April 3 Order, the Court inquired whether a furlough could exceed 30 days or be renewed or extended. The Government has not identified any authority to indicate that a furlough may initially exceed 30 days or be extended by BOP. However, BOP regulations and the governing Program Statement indicate that it is possible for an inmate to obtain, at the discretion of the warden, multiple furloughs. BOP regulations provide that "[o]rdinarily, Wardens will not grant a furlough to an inmate if: . . . the inmate has been granted a furlough in the past 90 days." 28 C.F.R. 570.36(b)(3). The BOP Program Statement regarding inmate furloughs expands on this provision of the BOP regulations: "If the Warden approves a furlough for such an inmate, he/she documents the reasons in the inmate's central file." BOP Program Statement 5280.09, at 12.[5] Accordingly, it is possible for an inmate to receive multiple sequential furloughs, provided that the BOP chooses in its discretion to grant such relief.

## V. IN LIMITED CIRCUMSTANCES INMATES MAY BE ABLE TO OBTAIN JUDICIAL REVIEW OF A BOP DENIAL OF A REQUESTED FURLOUGH

Finally, the Court's April 3 Order asked the parties to address what judicial review, if any, is available to an inmate aggrieved by the BOP's decision regarding a furlough request. In limited circumstances, inmates may be able to obtain judicial review of a BOP denial of a requested furlough. If an inmate wishes to contend that the BOP has denied a furlough request in violation of law or the inmate's constitutional rights, a petition for habeas corpus under 28 U.S.C. § 2241— a mechanism for challenging the manner in which a prisoner's sentence is being executed—might be an avenue to raise the matter with a court. As this Court is aware, however, such a petition must allege that the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). It cannot be used as a vehicle to seek substitution of a court's discretion for that of the BOP in a matter that is vested in the BOP's sole discretion by statute. Thus, even if a court were to hold, in resolving a petition under Section 2241, that the BOP rendered a furlough decision in violation of law, it is likely that the relief a court could order in such circumstances would be limited to correcting the legal error and ordering the BOP to reconsider the furlough request under the correct legal standards. For example, in *Zucker v. Menifee*, a judge of this District concluded that BOP's decision denying an inmate's request to be housed in a community corrections center had misinterpreted the governing legal standards. *See* No. 03 Civ. 10077 (RJH), 2004 WL 102779, at *2, 6-11 (S.D.N.Y. Jan. 21, 2004). Accordingly, the court there ordered BOP to "correct its unlawful act without delay" by "compelling" the warden to

---

[5] Available at https://www.bop.gov/policy/progstat/5280_009.pdf. In addition, the Program Statement provides a procedure that "when multiple furloughs are necessary over an extended period or on a recurring basis" for purposes of a recurring "training, educational, or work program in the community," BOP staff "may complete one furlough application, which expires when the activity concludes or on the one-year date of the initial furlough." *Id.* at 16.

"reconsider" the prisoner's application under the correct legal framework. *Id.* at *11. The court warned that it reserved the right to grant a writ of habeas corpus "if respondent fails to comply"—in other words, if the warden failed to reconsider the question as ordered. *Id.* That warning, however, should not be interpreted as a determination that a writ of habeas corpus could have been used to challenge the warden's discretionary decision if made under the correct legal framework.[6]

Mandamus relief is even more narrowly circumscribed. Under 28 U.S.C. § 1361, mandamus relief is available "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."[7] Such relief requires the petitioner to "prove that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *H.M.G. v. Johnson*, 599 F. App'x 396, 397 (2d Cir. 2015) (internal quotation marks and alteration omitted) (quoting *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008)). Mandamus relief may not be used, however, to challenge a lawful exercise of discretion by an agency official, because such a decision would clearly not constitute a failure to fulfill the type of non-discretionary, mandatory duty contemplated by mandamus relief. Accordingly, while it may be possible to imagine a set of hypothetical circumstances in which mandamus relief related to a furlough request might be appropriate, it is most likely not the appropriate vehicle for an inmate to challenge the denial of a furlough request. *See, e.g.*, *United States v. Gigante*, No. 02 Cr. 140 (ILG), 2002 WL 720347 (E.D.N.Y. Mar. 12, 2002) (denying mandamus petition seeking an order directing BOP to grant a furlough); *United States v. Underwood*, Crim. No. TDC-18-201, 2020 WL 1529160 (D. Md. Mar. 31, 2020) (concluding that court lacked any authority, even under All Writs Act, to order a furlough under Section 3622 because statute vests discretion in BOP).[8]

---

[6] The court's order in *Zucker v. Menifee* was styled as a writ of mandamus under the All Writs Act. However, the Government believes that the power being exercised by the court there is most properly considered to be an exercise under Section 2241, because the defendant was claiming that his sentence was being executed in violation of law. As described herein, mandamus relief is very narrow and likely does not reach such a situation.

[7] Because writs of mandamus are authorized under Section 1361, invocation of the All Writs Act, 28 U.S.C. § 1651, is not necessary. *See Penn. Bureau of Corrs. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1955) ("The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.").

[8] Any petition seeking mandamus relief must be filed in a District Court with personal jurisdiction over the named respondent. *See United States v. Huss*, 520 F.2d 598 (2d Cir. 1975).

## VI. CONCLUSION

For the foregoing reasons, as well as those set forth by the Government previously, the defendant's motion for a reduction in sentence or a furlough must be denied.[9]

                    Respectfully submitted,

                    GEOFFREY S. BERMAN
                    United States Attorney

by:   /s/
      Jacob R. Fiddelman
      Cecilia E. Vogel
      Assistant United States Attorneys
      (212) 637-1024 / 1084

cc:    Daniel S. Parker, Esq. (by ECF)
       Joshua Horowitz, Esq. (by ECF)
       Benjamin Silverman, Esq. (by ECF)

---

[9] Earlier this morning, the Government was informed by the BOP that it expects Nkanga's designation to be completed imminently. The Government will continue to keep the Court and counsel apprised of all relevant developments.