UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                   :

UNITED STATES OF AMERICA,          :

                                                   :

          -v-                             :                18-CR-713 (JMF)

                                                   :

NKANGA NKANGA,                :       <u>MEMORANDUM OPINION</u>

                           Defendant.       :         <u>AND ORDER</u>

                                                     :
--------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

On March 31, 2020, this Court denied an emergency motion for temporary release based on COVID-19 filed by Dr. Nkanga Nkanga, a sixty-seven year old former doctor with asthma and other medical conditions. *See United States v. Nkanga*, No. 18-CR-713 (JMF), 2020 WL 1529535 (S.D.N.Y. Mar. 31, 2020). Dr. Nkanga contended principally that he was eligible for bail pursuant to 18 U.S.C. §§ 3143(a) and 3145(c) because, having not yet been designated to a prison facility by the Bureau of Prisons ("BOP"), his sentence had not yet been "execut[ed]." ECF No. 74 ("Initial Motion"), at 2-5. The Court disagreed, concluding that — "although the rational and right result is for Dr. Nkanga to be temporarily released from custody until circumstances improve" — it was "powerless under the law as it currently stands to grant Dr. Nkanga relief." 2020 WL 1529535, at *2. Dr. Nkanga now moves, for the second time in as many weeks, for reconsideration of that ruling. *See* ECF No. 101 ("Motion"); *see also* ECF Nos. 88, 91. The latest request, he contends, is "grounded in newly-obtained information" that "sheds significant light" on the meaning of Section 3143(a) and "unequivocally supports" his argument that the Court has authority to grant him bail under that statute. Motion 1.

"It is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks, citations, ellipsis, and alterations omitted). Instead, "the standard for granting a . . . motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Id.* (internal quotation marks and alterations omitted). Measured against these standards, Dr. Nkanga's motion falls well short — indeed, far from citing controlling decisions that the Court overlooked, he emphasizes "[t]he lack of clear guidance from any controlling source." Motion 1. In view of the extraordinary circumstances of this moment and the significance of the issues raised by this case, however, the Court will exercise its discretion and review Dr. Nkanga's arguments as if he had raised them in the first instance. *Cf. Nat'l Elevator Cab & Door Corp. v. H & B, Inc.*, No. 07-CV-1562 (ERK) (RML), 2008 WL 207843, at *3 (E.D.N.Y. Jan. 24, 2008) (applying a "more relaxed standard" in light of the unusual briefing schedule set by the court "in the interest of resolving the motion expeditiously"). Alas, even so, his arguments fall short.[1]

First, Dr. Nkanga cites the legislative history of the Bail Reform Act to argue "that 'imposition' and 'execution'" — the two salient terms in Section 3143(a) — "remain two separate and distinct events." Motion 1-2. In particular, Dr. Nkanga seizes on language in a

---

[1]     Yesterday, the Government advised the Court that the BOP has now designated Dr. Nkanga to FCI Fort Dix and that he is now awaiting transfer there. ECF No. 111. Notably, that development arguably moots Dr. Nkanga's arguments for bail under Section 3143(a) altogether, as his original argument was premised on the view that Section 3143(a) applies until the BOP designates "the official detention facility at which the sentence is to be served." Initial Motion 2-3 (quoting 18 U.S.C. § 3585(a)). The Court will address his new arguments nevertheless.

Senate Report stating that Section 3143(a) covers "those awaiting the execution of sentence . . . to make it clear that a person may be released in appropriate circumstances for short periods of time after sentence . . . for such matters as getting his affairs in order prior to surrendering for service of sentence."  S. Rep. No. 225, 98th Cong., 1st Sess. (1983), *available at* 1983 WL 25404, at \*26, *quoted at* Motion 2.  That language, however, does not undermine the Court's interpretation of Section 3143(a); it confirms it.  As the Court explained, although execution of a sentence with respect to a defendant out on bail at the time of sentencing does not occur until the defendant surrenders to BOP custody, "where a defendant is already in federal custody at the time of sentencing, as Dr. Nkanga was, the sentence commences — and is executed — upon imposition and remand to BOP custody."  2020 WL 1529535, at \*3 (citing cases).

Second, Dr. Nkanga submits an affidavit from Panagiotis Dedes, a former employee of the BOP, who argues that Form AO-245B — which records the Court's judgment and transfer of the defendant from the custody of the U.S. Marshal Service to the BOP — shows that the "execution of a judgment occurs upon the inmate['s] arrival at the designated facility."  ECF No. 102 ("Dedes Decl."), ¶ 27; *see also* ECF No. 105-1 ("Form AO-245B").  Neither Dr. Nkanga nor Dedes, however, argues persuasively why Form AO-245B or the BOP's internal practices shed light on the proper interpretation of Section 3143(a)(1).  But in any event, Form AO-245B actually confirms that the U.S. Marshal Service "executed" the Court's judgment, at least for purposes of the Form itself, by delivering Dr. Nkanga to the custody of the BOP, which occurred when Dr. Nkanga was returned to the MDC after sentencing.  *See* Form AO-245B at 3 (providing for the Marshal to "execute[] this judgment" by delivering the defendant to the BOP); Dedes Decl. ¶ 19 ("When an inmate is housed at a BOP facility pending designation, he is in

BOP custody."). Thus, assuming that the Court should look to Form AO-245B in construing the language of Section 3143(a) — a dubious proposition — it would be of no help to Dr. Nkanga.

Third, Dr. Nkanga argues that the "Probation Act cases previously relied on by the Court in interpreting the meaning of the term, 'execution,' [do] not apply in the context of the Bail Reform Act." Motion 3. But the Court did not suggest otherwise in its earlier ruling. Instead, the Court cited cases involving probation and the power to stay a sentence merely to show that courts have used the term "execution" to mean commencement of a sentence in other contexts, as both parties here had argued the Court should do with respect to Section 3143(a)(1). Those cases did not provide definitive evidence of the meaning of Section 3143(a). Nor do the Probation Act cases cited by Dr. Nkanga — several of which are nearly a century old — cast doubt on the Court's interpretation of Section 3143(a), enacted in 1984. Far from it. In *United States v. Gargano*, 25 F.2d 723 (E.D. La. 1928), for example, the defendants had been "released on bail" following sentencing; thus, the court concluded that their sentences would be "executed by an actual commitment thereunder in the place to which [each] prisoner is sentenced." *Id.* at 723, 725. As the Court explained in its March 31, 2020 Memorandum Opinion and Order, the same would have been true for Dr. Nkanga had he been on bail at sentencing and then allowed to voluntarily surrender thereafter. *See* 2020 WL 1529535, at *4. Given the circumstances at the time of Dr. Nkanga's plea, however, the Court had no authority to release him on bail pending sentencing and, thus, his sentence was executed when he was returned to BOP custody.

Finally, Dr. Nkanga submits an April 3, 2020 letter filed by an Assistant United States Attorney for the District of New Jersey in a different case (the "DNJ Letter"), taking a position much like Dr. Nkanga's here: that "'[e]xecution of sentence' does not occur until the BOP designates a facility and the defendant reports to that facility" and that where a defendant is in

4

custody, but not yet designated, a court "retains the authority to release the defendant on bail" under Section 3143(a).  ECF No. 106, at 2.  The DNJ Letter is certainly awkward and suggests a failure of coordination within the Department of Justice on these pressing issues.  But it does not ultimately have a bearing on the Court's task in interpreting the meaning of Section 3143(a), as "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).  Indeed, as the Second Circuit recently reaffirmed, "law enforcement agency interpretations of criminal statutes are not entitled to deference: 'Whether the Government interprets a criminal statute too broadly (as it sometimes does) or too narrowly . . . , a court has an obligation to correct its error.'"  *United States v. Balde*, 943 F.3d 73, 83 (2d Cir. 2019) (quoting *Abramski v. United States*, 573 U.S. 169, 191 (2014)).  In any event, the position taken in the DNJ Letter did not last long.  On April 5, 2020, before the district court in that case took any action, the Assistant United States Attorney in New Jersey withdrew her earlier position based on "further consultation" with the BOP and "other components of the Department of Justice."  Docket No. 2:19-CR-0078 (CCC) (D.N.J.), ECF No. 98, at 1.

In sum, Dr. Nkanga's latest arguments — even viewed *de novo* — provide no basis for reconsideration of the Court's conclusion that it lacks power under Sections 3143(a) and 3145(c) to grant bail in this case.  That conclusion is no easier to swallow today than it was when the Court made its initial ruling.  As the Court explained then, "the balance of risks and benefits weighs heavily in favor of granting temporary release — as Dr. Nkanga does not pose a danger to the community and is no risk of flight if released, yet he is plainly in grave danger at the MDC and, if infected, will pose a danger to others."  2020 WL 1529535, at *2.  But the Court's constitutional obligation is "to apply the statute as it is written" — even if it believes "some other

approach might accord with good policy" or the exigencies of the moment. *Burrage v. United States*, 571 U.S. 204, 218 (2014) (internal quotation marks and brackets omitted).  Thus, if Dr. Nkanga is to get relief from the grave danger he faces as COVID-19 spreads through the jail and prison system, it must come from either the political branches or from a source of law other than Sections 3143(a) and 3145(c).

The Clerk of Court is directed to terminate ECF Nos. 101 and 108.


SO ORDERED.

Dated: April 7, 2020
       New York, New York

_____
JESSE M. FURMAN
United States District Judge