**PARKER AND CARMODY, LLP**
ATTORNEYS AT LAW
30 EAST 33RD STREET
6TH FLOOR
NEW YORK, N.Y. 10016

DANIEL S. PARKER                                      TELEPHONE: (212) 239-9777
MICHAEL CARMODY                                       FACSIMILE:  (212) 239-9175
CHRISTINA S. COOPER                                   DanielParker@aol.com

March 23, 2021

**By ECF**
Hon. Jesse M. Furman
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: **United States v.  Nkanga Nkanga**
**18 Cr 713 (JMF)**

Dear Judge Furman:

Dr. Nkanga respectfully moves by and through his undersigned counsel for a sentence reduction pursuant to 18 U.S.C. § 3852(c).

## I.      PRELIMINARY STATEMENT

Once again, this Court is being presented with an issue that has not been widely addressed before; namely, whether after being released temporarily on bail from the MDC due to COVID-related medical concerns, now that Dr. Nkanga has been vaccinated for COVID, there are extraordinary and compelling reasons that support a modification to his sentence such that he should not be ordered to surrender to the Bureau of Prisons and report to FCI Fort Dix, the facility to which, on April 6, 2020, he was designated. (Dkt. No. 111).

We submit that although the risk to Dr. Nkanga of catching COVID has been greatly reduced as a result of his being vaccinated, other medical issues have worsened.  His cognitive

1

state has continued to decline as a ██████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████. A copy of a narrative

report dated March 16, 2021 from Dr. Allan B. Perel, his treating neurologist, along with two

prior reports, one from July 2020 and the other from December 2020, reflect a██████████████

████████████████████████.  Though Dr. Nkanga appears coherent on initial impression

and he remains competent and able to comprehend, his deterioration has been steady – ██████

████████████████████████████

     An analysis of all of the factors relevant to a Court's determination of a motion pursuant

to 18 U.S.C. § 3852(c)(1)(A)(i), supports the granting of this motion now.

**<u>A Year of Changes</u>**

     In the past year since the Court ordered his release on bail on April 7, 2020 (Dkt. No.

120) on the pending 2255 Motion (Dkt. Nos. 115, 118), much has changed in the world, this

country, the Bureau of Prisons, and individually, with regard to this defendant.

     One year ago, few would have believed that:

- A worldwide spread of a fatal virus would result in millions of deaths, debilitating economic destruction, and a global race to produce a vaccine.

- On January 6, 2021, thousands of insurrectionists would have stormed the U.S. Capitol, hoping to overturn the election.

- Over 500,000 people in this country would have died from COVID.

- The word pandemic would no longer be solely associated with a science fiction film.

---

[1] Given the sensitive nature of this medical information, we respectfully request permission to redact portions of this memorandum that refer ████████████ from the public filing and we request that the unredacted memorandum be filed under seal.

- "… Citibank, one of the most sophisticated financial institutions in the world, would have "made a mistake that had never happened before, to the tune of nearly $1 billion…" (See 20 CV 6539 (JMF), Dkt. No. 243 at p. 100)

In terms of changes within the BOP, and with regard to the plethora of compassionate release motions that have been filed during the past year:

- On March 26, 2020, the former Attorney General to the United States issued a memorandum which stated, "… there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities.

- The Government can no longer argue with a straight face that, "[i]n any event, the BOP generally, and the MDC specifically, are prepared to handle the risks presented by COVID and other health issues." (Gov't Opp to Def.'s Motion Seeking Compassionate Release) (Dkt. No. 77 at p. 8)

- The Government's argument on March 28, 2020 opposing Dr. Nkanga's release from the MDC, arguing, "[t]o date, only a single inmate has tested positive for the virus in the MDC, and that inmate has been quarantined in isolation." (*Id*. at p. 7) has proved to be an unreliable predictor of outcomes.  The BOP now reports that 344 inmates have "recovered" from COVID, 1 inmate died and over 30 inmates and staff are currently diagnosed as positive. See https://www.bop.gov/coronavirus (last visited 2/26/2021)

- That Fort Dix, where Dr. Nkanga has been designated, has become one of the worst BOP facilities in the nation with respect to the spread of the virus.

In terms of changes within the law and within the Judiciary's response to COVID,

- The law now permits District Courts, in considering an application for compassionate release under the First Step Act, "… to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *United States v. Brooker*, 2020 WL 5739712, (2d Cir 2020);

- The law now permits District Courts to grant a sentence reduction and fashion a new sentence when "extraordinary and compelling reasons warrant such a reduction." *Id.; United States v. Pellet,* 2021 WL 807242, 19 Cr 169 (VM)(March 3, 2021)(granting a sentence reduction to an inmate at Ft. Dix due to health risks as a result of COVID); *United States v. Rodriguez*, 00Cr 761 (JSR)(Sept. 30, 2020)(reducing a sentence imposed for murder from life to 30 years);  and *United States v. Dana*, 14 Cr 405 (JMF) (Dkt. No. 108).

- In granting sentence reductions, courts in this district, have re-evaluated sentences which they once believed to be "reasonable" and have now granted relief to so many because circumstances changed.[2]

---

[2] *United States v. Campagna*, No. 16 Cr. 78 (LGS), 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020) (granting release on consent to defendant convicted of firearms offenses based on defendant's health and threat he faced from COVID); *United States v. Dana*, 14 Cr. 405 (JMF), Dkt. No. 108 (S.D.N.Y. Mar. 31, 2020) (granting release on consent); *United States v. Perez*, No. 17 Cr. 513 (AT), 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) (granting release based on health issues and waiving exhaustion requirement); *United States v. Resnick*, No. 12 Cr. 152 (CM), 2020 WL 1651508 (S.D.N.Y. Apr. 2, 2020) (granting release and finding exhaustion requirement met because request submitted by hand 30 days ago); *United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1684062 (S.D.N.Y. Apr. 2, 2020) (granting compassionate release on consent to defendant not in BOP custody); *United States v. Zukerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020) (waiving exhaustion requirement over government objection and granting release); *United States v. Jasper*, No. 18 Cr. 390 (PAE), 2020 WL 1673140 (S.D.N.Y. Apr. 4, 2020) (granting unopposed motion); *United States v. Harris*, No. 18 Cr. 364 (PGG), ECF Dkt. 413 (S.D.N.Y. Apr. 6, 2020) (granting unopposed motion); *United States v. McBride*, No. 15 Cr. 876 (DLC), ECF Dkt. No. 73, (S.D.N.Y. Apr. 7, 2020) (granting unopposed motion); *United States v. Gentille*, No. 19 Cr. 590 (KPF), 2020 WL 1814158 (S.D.N.Y. Apr. 9, 2020) (granting release on consent where government agreed to waive exhaustion); *United States v. Knox*, No. 15 Cr. 445 (PAE), ECF Dkt. No. 1088 (S.D.N.Y. Apr. 10, 2020) (granting release on consent; government initially opposed then agreed to waive exhaustion); *United States v. Santiago*, No. 12 Cr. 732 (WHP), ECF Dkt. No. 235 (S.D.N.Y. Apr. 10, 2020) (granting release on consent); *United States v. Smith*, No. 12 Cr. 133 (JFK), 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020) (waiving exhaustion and granting release); *United States v. Kataev*, No. 16 Cr. 763 (LGS), 2020 WL 1862685 (S.D.N.Y. Apr. 14, 2020) (granting compassionate release with government consent); *United States v. Scparta*, No. 18 Cr. 578 (AJN), 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020) (waiving exhaustion requirement and granting release); *United States v. Gross*, No. 15 Cr. 769 (AJN), ECF Dkt. 764, 771 (S.D.N.Y. Apr. 20, 2020) (granting release and waiving exhaustion for defendant with medical conditions rendering him high risk); *United States v. Park*, No. 16 Cr. 473 (RA), 2020 WL 1970603 (S.D.N.Y. Apr. 24, 2020) (granting compassionate release after government agreed to waive exhaustion and BOP delayed and possibly rescinded promise to release client at FCI Danbury to home confinement); *United States v. Cooper*, No. 08 Cr. 356 (KMK), 2020 WL 4195273 (S.D.N.Y. Apr. 28, 2020) (granting release where government agreed exhaustion met because the warden denied the application; defendant had "alarmingly bad criminal history" and 4 years left to serve, but had already served 11 years); *United States v. Musumeci*, No. 07 Cr. 402 (RMB), ECF Dkt. 58 (S.D.N.Y. Apr. 28, 2020) (granting release and waiving exhaustion over government objection); *United States v. Prado*, No. 13 Cr. 811 (ALC), ECF Dkt. 722 (S.D.N.Y. Apr. 30, 2020) (granting compassionate release over government's objection claiming defendant was safer at FCI Schuylkill rather than in New York City and that he posed a danger to the community); *United States v. Lewis*, No. 16 Cr. 302 (KMK), 2020 WL 2081374 (S.D.N.Y. Apr. 30, 2020) (granting release, over government objection, to defendant with diabetes and high blood pressure); *United States v. Rivera*, No. 86 Cr. 1124 (JFK), 2020 WL 2094094 (S.D.N.Y. May 1, 2020) (granting release to medically vulnerable defendant due to COVID; court found new compassionate release statute did not apply, but granted relief under old Rule 35); *United States v. Field*, No. 18 Cr. 426 (JPO), ECF

Dkt. 38 (S.D.N.Y. May 4, 2020) (granting release to defendant with hypertension after BOP denied request, but 30 days total had passed); *United States v. Venice*, No. 17 Cr. 89 (CS), ECF Dkt. 1009 (S.D.N.Y. May 7, 2020) (granting release to defendant sentenced to 18 months for RICO violation, despite fact that he is a "made member of an organized crime family"); *United States v. Pena*, No. 15 Cr. 551 (AJN), 2020 WL 2301199 (S.D.N.Y. May 8, 2020) (granting release to 60-year old defendant with hypertension and hyperlipidemia who was convicted of violent armed robbery and had served about 2/3 of 84-month sentence; court waived exhaustion); *United States v. Medina*, No. 09 Cr. 983 (WHP), ECF Dkt. 241 (S.D.N.Y. May 11, 2020) (releasing defendant with asthma who was serving last two months of 9-month VOSR sentence); *United States v. Valencia*, No. 15 Cr. 163 (AT), 2020 WL 2319323 (S.D.N.Y. May 11, 2020) (granting release and waiving exhaustion on limited remand from the Circuit to defendant with heart conditions and hypertension); *United States v. DeMaria*, No. 17 Cr. 569 (ER), ECF Dkt. 232 (S.D.N.Y. May 12, 2020) (granting release over government objection to defendant with medical conditions and approximately one year left on sentence); *United States v. Fazio, Sr.*, No. 11 Cr. 873, ECF Dkt. No. 329 (S.D.N.Y May 15, 2020) (releasing 74-year-old defendant convicted of extortion and bribery offenses, with had serious medical conditions and had served 74% of his 151-month sentence); *United States v. Deleon*, No. 16 Cr. 670 (KMW), ECF Dkt. 305 (S.D.N.Y. May 17, 2020 (granting release to defendant with numerous medical issues, who was convicted of conspiracy to sex traffic minors and who had served one year of five year sentence); *United States v. Pagliuca*, No. 17 Cr. 432 (CS), ECF Dkt. 63 (S.D.N.Y. May 18, 2020) (releasing defendant convicted of child pornography possession who had served 80% of sentence and suffered from diabetes and recent heart attack); *United States v. Bennett*, No. 05 Cr. 1192 (NRB), 2020 WL 2539077 (S.D.N.Y. May 18, 2020) (granting release into ICE custody to 71 year old defendant); *United States v. El-Hanafi*, No. 10 Cr. 162 (KMW), 2020 WL 2538384 (S.D.N.Y. May 19, 2020) (releasing defendant convicted of material support of terrorism who had around 33 months remaining on 15-year sentence, based on hypertension and anti-phospholipid syndrome; waived exhaustion over government objection); *United States v. Jones*, No. 15 Cr. 95 (AJN), ECF Dkt. 2865 (S.D.N.Y. May 24, 2020) (granting release to defendant with sickle-cell anemia at Danbury, who had severed 2/3 of 78-month sentence; government opposed based on dangerousness and racketeering offense of conviction); *United States v. Gonzalez*, No. 12 Cr. 326 (JMF), No. 05 Cr. 1292 (JMF), 2020 WL 2766048 (S.D.N.Y. May 28, 2020) (granting release to 45-year old defendant with chronic hypertension and obesity who was sentenced to 14 years for drug crimes, had served over 8 years, and had good prison record); *United States v. Torres*, No. 87 Cr. 593 (SHS), 2020 WL 2815003 (S.D.N.Y. June 1, 2020) (reducing defendants' drug sentences from life based on substantial term already served, disparity with codefendants' sentences, post-sentencing rehabilitation, and COVID risk; rejecting government's "issue exhaustion" argument and finding earlier request sufficient to exhaust although it did not mention COVID); *United States v. Anderson*, No. 16 Cr. 824 (JMF), 2020 WL 2849483 (S.D.N.Y. June 2, 2020) (granting release to drug defendant originally sentenced to 84 months who suffers from severe obesity and had served around 43 months); *United States v. Williams-Bethea*, No. 18 Cr. 78 (AJN), 2020 WL 2848098 (S.D.N.Y. June 2, 2020) (granting release to bribery/fraud defendant at Danbury with serious medical issues, waiving exhaustion); *United States v. Monzon*, No. 99 Cr. 157 (DLC), 2020 WL 4195272 (S.D.N.Y. June 2, 2020) (granting release to defendant with heart condition who had served 240 months of 360 month sentence, which had been reduced from life sentence); *United States v. Ozols*, No. 16 Cr. 692 (JMF), 2020 WL 2849893 (S.D.N.Y. June 2, 2020) (granting release to wire fraud defendant

who had completed 3/4 of 39 month sentence, was 42, and had anxiety and depression); *United States v. Nieves*, No. 16 Cr. 504 (CS), 2020 WL 3410335 (S.D.N.Y. June 8, 2020) (granting release to 52-year old defendant sentenced to 72 months for wire fraud, who served around 74% of his sentence, and who had coronary artery disease and was at Elkton); *United States v. Rodriguez*, No. 17 Cr. 157 (VEC), 2020 WL 3051443 (SDNY June 8, 2020) (granting release to defendant with autoimmune disorder who had served the "vast majority" of his sentence); *United States v. Estrella*, No. 08 Cr. 823 (DLC), ECF Dkt. 194 (S.D.N.Y. June 11, 2020) (granting motion of 62-year old diabetic defendant at Danbury sentenced for drug offense); *United States v. Cooper*, No. 13 Cr. 66 (JPO), ECF Dkt. 36 (S.D.N.Y. June 11, 2020) (releasing 32-year old defendant at Fort Dix who had pled guilty to enticement of a minor, had served over 2/3 of sentence, suffered from asthma, and had previous hospitalizations for pneumonia and bronchitis); *United States v. Aceveo*, No. 18 Cr. 365 (LGS), 2020 WL 3182770 (S.D.N.Y. June 15, 2020) (granting release to ICE custody to defendant with medical vulnerabilities); *United States v. Brown*, 18 Cr. 390 (PAE), ECF Dkt. 472 (S.D.N.Y. June 17, 2020) (granting release to a defendant at Danbury who had served less than half of his sentence for a drug trafficking conspiracy but was 65 years old and suffered from HIV, Hepatitis C, hypertension, and partial paralysis from a past stroke); *United States v. Bayuo*, No. 15 Cr. 576 (JGK), 2020 WL 3415226 (S.D.N.Y. June 20, 2020) (granting release to ICE custody to defendant with diabetes and hypertension); *United States v. Austin*, No. 06 Cr. 991 (JSR), 2020 WL 3447521 (S.D.N.Y. June 22, 2020) (granting compassionate release to defendant at liberty with upcoming surrender date given risks of COVID and rehabilitation); *United States v. Franco, No. 12 CR. 932 (PAC)*, 2020 WL 4344834 (S.D.N.Y. June 24, 2020) (granting release to a 41-year-old defendant at FCI Terre Haute with severe diabetes, obesity, and hypertension with one year left on his 10-year sentence); *United States v. Szucs*, No. 17 Cr. 373 (KMK), ECF Dkt. 44 (S.D.N.Y. June 25, 2020) (granting unopposed release motion where defendant at Elkton with heart issues and post-nephrectomy for cancerous tumor in one kidney); *United States v. Davies*, No. 18 Cr. 390 (PAE), ECF Dkt. 479 (S.D.N.Y. June 26, 2020) (granting release to 60-year old defendant at Danbury who has hypertension, obesity); *United States v. Arango*, 15 Cr. 104 (JMF), 2020 WL 3488909 (S.D.N.Y. June 26, 2020) (granting release for defendant to be voluntarily deported who has served 93% of a 66-month drug sentence); *United States v. Joseph*, 18 Cr. 179 (JSR), ECF Dkt. 288 (S.D.N.Y. June 29, 2020) (releasing defendant at Danbury with exercise-induced anaphylaxis who was convicted of conspiracy to commit wire fraud, conspiracy to commit device fraud, and aggravated identity theft); *United States v. Hernandez*, No. 10 Cr. 1288 (LTS), 2020 WL 3893513 (S.D.N.Y. July 10, 2020) (granting release for 62-year-old defendant at Fort Dix with COPD, obesity, and type II diabetes); *United States v. Van Praagh*, No. 14 Cr. 00189 (PAC), 2020 WL 3892502 (S.D.N.Y. July 10, 2020) (granting release for 42-year-old defendant at FCC Lompoc with HIV with a low CD4 cell count); *United States v. Spencer*, No. 04 Cr. 1156 (PAE), 2020 WL 3893610 (S.D.N.Y. July 10, 2020) (granting release to a 53-year-old defendant at MDC Brooklyn who had about 6 months of his 12-month sentence left and had hypertension, a congenital heart defect, latent tuberculosis, chronic kidney disease, and potentially Type 2 diabetes); *United States v. Barajas*, 18 Cr. 736 (NSR), 2020 WL 3976991 (S.D.N.Y. July 13, 2020) (granting release for a 36-year-old defendant at Grady who had tested positive for COVID three weeks earlier, had undiagnosed asthma but no other preexisting conditions, and would be released in two months); *United States v. Amaro*, 16 Cr. 848 (KPF), 2020 WL 3975486 (S.D.N.Y., Jul. 14, 2020) (granting release for 32-year-old defendant at Fort Dix with mental health issues and other co-morbidities not publicly disclosed who had 5 months remaining on his

sentence); *United States v. Williams*, 12 Cr. 111 (CS), ECF Dkt. 570 (S.D.N.Y. July 16, 2020) (granting release for defendant in Orange County Jail suffering from hypertension, morbid obesity, and TB, who had 5 months left on his 12-month sentence); *United States v. Vaughn*, No. 13 Cr. 867 (WHP), ECF Dkt. 102 (S.D.N.Y. July 21, 2020) (granting release to defendant at FCI Morgantown with hypertension, diabetes, and impaired kidney function); *United States v. Chappell*, No. 16 Cr. 512 (LTS), 2020 WL 4194914 (S.D.N.Y. July 21, 2020) (granting release to a Residential Reentry Center to 59-year-old defendant at Fort Dix who is obese and is on an immunosuppressive therapy); *United States v. McFadden*, No. 17 Cr. 463 (LAK), ECF Dkt. 67 (S.D.N.Y. July 22, 2020) (granting release to 71-year-old defendant serving sentence for enticement of a minor at FCI Ashland who has diabetes, coronary artery disease, high blood pressure, high cholesterol, chronic bronchitis, and asthma); *United States v. Gluzman*, No. 96 Cr. 323 (LJL), ECF Dkt. 117 (S.D.N.Y. July 23, 2020) (granting release to 71-year-old defendant at FMC Carswell originally sentenced to life for conspiracy to commit murder, and actually committing murder of her husband under 18 U.S.C. §§ 371 and 2261(a)(1) where the defendant had numerous debilitating medical conditions rendering her essentially unable to care for herself); *United States v. Pacheco*, No. 12 Cr. 408 (JMF), 2020 WL 4350257 (S.D.N.Y. July 29, 2020) (granting release to home confinement for a 40-year-old defendant at MDC with two months left on his eight-month sentence); *United States v. Panton*, No. 89 Cr. 346 (LAP), 2020 WL 4505915 (S.D.N.Y. Aug. 4, 2020) (granting release to defendant with significant rehabilitation and health problems who had served nearly 30 years of a life sentence); *United States v. Rice*, No. 83 Cr. 150 (LGS), ECF Dkt. 83 (S.D.N.Y. Aug. 5, 2020) (granting release to 87-year-old defendant serving life sentence); *United States v. Somers*, No. 17 CR 37-6 (VB), 2020 WL 4505814 (S.D.N.Y. Aug. 5, 2020) (granting release to defendant at FCI Schuylkill with high blood pressure, a chronic kidney condition, and obesity); *United States v. Ramirez*, No. 19 Cr. 105 (LGS), ECF Dkt. 52 (S.D.N.Y. Aug. 6, 2020) (granting release to defendant at MDC Brooklyn with diabetes, hypertension, elevated cholesterol, and obesity who had served 18 months of a six-year sentence); *United States v. Miller*, No. 16 Cr. 666 (KMK), ECF Dkt. 321 (S.D.N.Y. Aug. 6, 2020) (granting release to defendant with hypertension, obesity, and asthma at FCI Loretto); *United States v. Torres*, No. 17 Cr. 501 (NSR), ECF Dkt. 23 (S.D.N.Y. Aug. 7, 2020) (granting release to defendant at FCI Miami with diabetes, obesity, hypertension, and an injured lung); *United States v. Benitez*, No. 06 CR. 1156 (LAP), 2020 WL 4586849 (S.D.N.Y. Aug. 10, 2020) (granting release to defendant with morbid obesity, hypertension, and breathing issues); *United States v. Britton*, No. 17 CR 260-LTS, 2020 WL 4586799 (S.D.N.Y. Aug. 10, 2020) (granting release to home confinement to 54-year-old defendant with diabetes and high blood pressure); *United States v. Goode*, No. 14 CR 810-07 (CM), 2020 WL 4586254 (S.D.N.Y. Aug. 10, 2020) (granting release to defendant with renal disease, renal anemia, hyperthyroidism, and hypertension); *United States v. Zoquier-Solano*, No. 13 Cr. 772 (JPO), ECF Dkt. 45 (S.D.N.Y. Aug. 10, 2020) (granting release to defendant with hypertension, hyperlipidemia, and borderline obesity who had served seven years of ten-year mandatory minimum sentence); *United States v. Modesto*, No. 17 CR. 251 (PGG), 2020 WL 4735340 (S.D.N.Y. Aug. 13, 2020) (granting release to obese defendant where court found mandatory sentence excessive at time of sentencing); *United States v. Simon*, No. 18 CR. 390-15 (PAE), 2020 WL 5077390, (S.D.N.Y. Aug. 27, 2020) (granting release to 72-year-old defendant with HIV, COPD, Hepatitis C, prostate cancer, and hypertension); *United States v. Wilson*, No. 16 CR. 317-17 (PAE), 2020 U.S. Dist. LEXIS 157533 (S.D.N.Y. Aug. 31, 2020) (granting release to defendant with obesity, hypertension, asthma, and history of tuberculosis); *United States v. Mitchell*, No. 13-CR-70

(JMF), 2020 WL 6193860 (S.D.N.Y. Sept. 1, 2020) (granting release to defendant with type II diabetes mellitus and hypertension who had served over 85% of sentence); *United States v. Benjamin*, No. 15-CR-445-15 (PAE), 2020 U.S. Dist. LEXIS 168644 (S.D.N.Y. Sep. 15, 2020) (granting release to defendant with asthma); *United States v. Sterling*, No. 16-CR-488 (LAK), 2020 WL 5549965 (S.D.N.Y. Sept. 16, 2020) (granting release to defendant with COPD, chronic asthma, allergic reactions to common food items, and sciatica); *United States v. Sarpong*, No. 04-CR-1106-LTS, 2020 WL 5578420 (S.D.N.Y. Sept. 17, 2020) (granting release to defendant with diabetes, obesity, and kidney disease); *United States v. Rodriguez*, No. 00 CR. 761-2 (JSR), 2020 WL 5810161 (S.D.N.Y. Sept. 30, 2020) (granting release to clinically obese defendant at FCI Allenwood with diabetes who had served 30 years of a life sentence); *United States v. Bary*, No. 98-CR-1023 (LAK), 2020 WL 5946985 (S.D.N.Y. Oct. 7, 2020) (granting release to 60-year-old defendant with obesity and asthma); *United States v. Fisher*, No. 1:83-CR-00150-PAC-1, 2020 WL 5992340 (S.D.N.Y. Oct. 9, 2020) (granting release to defendant with lung damage, high blood pressure, and hyperlipidemia, who had served 38 years of a life sentence); *United States v. Fernandez*, No. 12-CR-844-9 (AJN), 2020 U.S. Dist. LEXIS 190157 (S.D.N.Y. Oct. 14, 2020) (granting release to defendant at Fort Dix with hypertension and diabetes); *United States v. Hernandez Frometa*, No. 18 CR. 660 (AKH), 2020 WL 6132296, (S.D.N.Y. Oct. 19, 2020) (granting release to 40-year-old defendant with hypertension); *United States v. Afanasyev*, No. 17 CR. 350 (LAP), 2020 WL 6395303 (S.D.N.Y. Oct. 30, 2020) (granting release to cancer survivor with diabetes and hyperlipidemia); *United States v. Ramos*, No. 18 CR. 852 (AT), 2020 WL 6498198 (S.D.N.Y. Nov. 4, 2020) (granting release to defendant with less than a year left of sentence suffering from obesity, HIV, and sinus bradycardia); *United States v. Avery*, No. 14-CR-810 (JMF), 2020 WL 6728781 (S.D.N.Y. Nov. 16, 2020) (granting release to clinically obese defendant who had served more than 70% of sentence); *United States v. Yu*, No. 90 CR. 47-6 (AT), 2020 WL 6873474 (S.D.N.Y. Nov. 23, 2020) (granting release to 70-year-old with hypertension, high cholesterol, sinus issues, and sleep apnea who had served 30 years of mandatory life sentence that sentencing judge considered unjust); *United States v. Vargas*, No. 88-CR-325 (VEC), 2020 WL 6886646 (S.D.N.Y. Nov. 24, 2020) (granting release to defendant with hypertension and obesity); *United States v. Martinez*, No. 04 CR. 48-20 (JSR), 2020 WL 7128951 (S.D.N.Y. Dec. 4, 2020) (granting release to defendant with diabetes, hypertension, and asthma who had served 70% of sentence); *United States v. Ramos*, No. 12-CR-556 (LTS), 2020 WL 7128967 (S.D.N.Y. Dec. 4, 2020) (granting release to defendant recovering from cancer with hypertension, asthma, and obesity); *United States v. Garcia*, No. 11-CR-989 (JSR), 2020 WL 7212962 (S.D.N.Y. Dec. 8, 2020) (granting sentence reduction to 70-year-old defendant due to age and obesity); *United States v. Stolarz*, No. 11 CR 230 (CM), 2020 WL 7230680 (S.D.N.Y. Dec. 8, 2020) (granting release to 80-year-old defendant with hypertension, cardiovascular disease and hyperlipidemia who had served 90% of sentence); *United States v. Beras*, No. 99-CR-75 (RA), 2020 WL 7496354 (S.D.N.Y. Dec. 20, 2020) (granting release to defendant with hypertension, hyperlipidemia, glaucoma, and chronic nasal infection who had served 90% of sentence); *United States v. Correa*, No. 08-CR-1026 (VEC), 2020 WL 7490098 (S.D.N.Y. Dec. 21, 2020) (granting release to overweight defendant with HIV and asthma); *United States v. Lopez*, No. 17-CR-204 (JMF), 2020 WL 7696005 (S.D.N.Y. Dec. 28, 2020) (granting release to defendant without elevated COVID risk who had served almost 85% of sentence for a non-violent drug offense); *United States v. Hill*, No. 16-CR-397-LTS, 2020 WL 7711665 (S.D.N.Y. Dec. 29, 2020) (granting release to defendant with COPD and asthma); *United States v. Henareh*, No. 11-CR-93-1 (JSR), 2021 WL 119016 (S.D.N.Y. Jan. 13, 2021) (granting sentence reduction

- This Court has exercised its discretion, weighed the 3553(a) factors and granted sentence reductions to defendants:

  1) *Within weeks* of sentencing the defendant to what the Court previously viewed was a reasonable sentence; *United States v. Dana*, 14 Cr 405 (JMF) (Dkt. No. 108);

  2) For whom continued incarceration posed a severe health risk given his at-risk medical conditions, despite having a lengthy criminal history for which the current sentence "… capped a 'career' of crime spanning from 1997 to 2011." *United States v. Gonzalez,* 12 Cr 326 (JMF) (Dkt. No. 77);

  3) For whom the threat of COVID, by itself, to an inmate in prison constituted an extraordinary and compelling reason for compassionate release, in a case where the defendant violated the terms of his supervised release; *United States v. Pacheco*, 12 Cr 408 (JMF) (Dkt. No 57);

  4) For whom a 47-year-old inmate Fort Dix Low facility with the risk factor of severe obesity who had served 43 of 84 months of his sentence and who had already been the beneficiary of a less-than-guideline sentence; See *United States v. Sterling Anderson*, 16 Cr 824 (JMF) (Dkt. No. 83);

  5) Who had no prior criminal history and a history of employment and who maintained contact with his family; *United States v. Lopez,* 17 Cr 204 (JMF) (Dkt. No. 139); and

  6) For whom, at sentencing, the Court noted that the defendant's crime was a "sophisticated" and "serious offense," but also that he was not the "mastermind behind it," that it was his first offense, and that he showed "obvious remorse and contrition." In its decision, the Court noted that "there's not a great need for specific deterrence or a need to protect the public from

---

to 63-year-old defendant with hypertension who had contracted and survived COVID during the previous year); *United States v. Mieses*, No. 17 CR. 251 (PGG), 2021 WL 124420 (S.D.N.Y. Jan. 13, 2021) (granting release to defendant with obesity who had only 14 months left until release); *United States v. Mcrae*, No. 17 CR. 643 (PAE), 2021 WL 142277 (S.D.N.Y. Jan. 15, 2021) (granting release to defendant with COVID risk who was eligible for home confinement in less than 12 months); *United States v. Underwood*, No. 88-CR-822 (SHS), 2021 U.S. Dist. LEXIS 8378 (S.D.N.Y. Jan. 15, 2021) (granting release to 67-year-old, COVID-positive defendant whose conduct while serving life sentence "exceed[ed] the bounds of what we consider 'rehabilitation.'").

further crimes of [the defendant]Mr. Ozols." *United States v. Ozols,* 16 Cr 692 (JMF) (Dkt. No. 488).

In terms of changes that directly impact this defendant's health:

- Dr. Nkanga was released from the MDC on April 9, 2020, and pursuant to the Court's bail conditions, he has spent the past year on home incarceration, enforced by electronic monitoring. To date, he has fortunately managed to avoid getting COVID;

- On February 24, 2021, he received the first of two "Moderna" COVID vaccinations;

- His second vaccine is scheduled for March 24, 2021;

- Despite his fortune in avoiding contracting COVID, Dr. Nkanga, now age 68, has continued to decline in health. ███████████████████████

- Dr. Nkanga continues to suffer from asthma and hypertension.

Here, not only have non-COVID health factors caused a severe decline in Dr. Nkanga's health, but COVID risks also remain, albeit significantly diminished ones, such that there remains "a unique combination of circumstances" that constitute "exceptional reasons" why his incarceration is no longer appropriate. Though the COVID medical risks upon which the Court focused (Dkt. No. 87, Order dated March 31, 2020) and which were relevant to the Court's decision to grant bail on April 7, 2020 (Dkt. No. 120) have been significantly ameliorated, the totality of all the factors, including, but not limited to:

> "… the defendant's age; his multiple health issues; the nature of the defendant's offense; the precise timing of the sentencing proceeding (which occurred on March 12, 2020) in relation to the emerging COVID-19 pandemic; and the conclusions already reached by the Court in previous aspects of this litigation regarding the defendant's health issues, and apparent lack of dangerousness or risk of flight" (Dkt. No. 120)

-- all militate in favor of a sentence reduction.

We recognize that Dr. Nkanga's medical conditions remain only one part of the equation and the Court must conduct a 3553(a) analysis in evaluating this application. *United States v. Roberts,* 18 Cr 528 (JMF) (Dkt. No 310) (denying compassionate release, where defendant who was sentenced to a 48 month sentence three months prior "assisted in the sex-trafficking of minors, an egregious crime, and she played a 'critical,' even if marginal, 'role' in the scheme," had "minimized" her behavior).

We submit that Dr. Nkanga's age, history, character, crime, sentence, previously served period of incarceration, health condition, length of his remaining sentence, lack of a need for future deterrence, and extremely low risk of recidivism weigh heavily in favor of granting this application.

## II.    CURRENT PROCEDURAL STATUS

We will not recite the complete procedural history in this case assuming the Court's familiarity with the record.  The current procedural status is that on April 7, 2020 (Dkt. No. 120), the Court set bail on the pending 2255 Motion, 20 CV 2871 (JMF) (Dkt. Nos, 115, 118), related to an underlying claim that "that counsel was ineffective leading up to and at sentencing for failing to request bail pending sentencing and a voluntary surrender date that would have enabled Dr. Nkanga to remain out of custody during the pandemic" after denying Dr. Nkanga's motion(s) for compassionate release (Dkt. Nos. 73-74, 94 and 101).  Since bail was predicated on the 2255 motion and neither party believed it was necessary for the Court to address that motion on the merits, the Court granted (Dkt. No. 147) the parties' March 19, 2021 joint application (Dkt. No. 146) in which Dr. Nkanga agreed to withdraw the 2255 motion[3] and to surrender to the Bureau of Prisons by May 14, 2021.

---

[3] Benjamin Silverman, Esq. has taken over as Dr. Nkanga's sole representative in respect to the 2255 motion.

In his letter to the Court (Dkt. No. 146), Mr. Silverman further advised that the undersigned counsel would continue to represent Dr. Nkanga with respect to any application under 18 USC 3582(c).

### III. THE COURT HAS THE AUTHORITY TO CONSIDER DR. NKANGA'S MOTION FOR COMPASSIONATE RELEASE

**Dr. Nkanga's Request for Compassionate Release to the BOP Was Not Granted**

The Court has authority to consider this motion because Dr. Nkanga has met the procedural prerequisites laid out under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act.

Before the First Step Act was enacted, 18 U.S.C. § 3582(c)(1)(A)(i) permitted only the BOP to petition the court for compassionate release. Dismayed at the low numbers of such petitions, Congress in 2018 amended the statute so as to expressly permit inmates, like Dr. Nkanga, to petition the court directly for a reduction in sentence and compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also* U.S. Dep't of Justice, *The Federal Bureau of Prisons ' Compassionate Release Program,* p. 11 (2013); 164 CONG. REC. S7774 (daily ed. Dec. 18, 2018) (noting that the First Step Act's amendment to compassionate release law was Congress' response to the BOP's failure to "properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered"). While the statutory scheme "preserve[ed] the BOP's role relative to a sentence reduction in certain limited respects," including requiring that the inmate first petition the warden to make such a motion on his or her behalf, "it eliminated the BOP Director's role as the exclusive channel through which a sentence reduction could be considered by courts." *United States v. Redd,* No. 1:97-CR-00006- AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020). The compassionate release statute now allows the inmate to seek release *directly* from the court if "the defendant has fully exhausted all

administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A)(i); *see also* 164 CONG. REC. S7774 (daily ed. Dec. 18, 2018) (purpose of amendment to "expedite compassionate release applications").

Here, Dr. Nkanga has met the strict statutory procedural prerequisites, putting his motion squarely within the Court's authority under the compassionate release statute. On April 1, 2020, Dr. Nkanga submitted a written request to then Warden Derek Edge of the MDC, requesting compassionate release which was never granted. More than thirty days have elapsed since his request was, for all intents and purposes, denied by the warden.

**Dr. Nkanga is Not Currently In BOP Custody and Is Unable to Pursue Further Administrative Relief**

Even if the Court were to find that previously Dr. Nkanga did not exhaust his administrative remedies in seeking compassionate release, he is unable to pursue administrative relief anew because he is no longer in BOP custody.

Typically, a defendant can apply directly to the sentencing court for compassionate release, after he has exhausted his administrative remedies through the Bureau of Prisons. Dr. Nkanga, however, is not currently in the custody of the BOP. As such, there are no BOP-administrative actions for him to take: he has no BOP Warden from whom to seek administrative relief. The BOP-administrative process contemplated by section 3582 is, simply, not available to him. If it is impossible or futile to exhaust administrative remedies, or if an administrative review process is not available, then any exhaustion requirement should be waived. *Cf., e.g., Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016) (emphasizing that prisoner need not exhaust

administrative remedies before challenging prison conditions in court if no administrative

remedy is available, and that remedies are "unavailable" where an office disclaims the ability to

consider a request; the process is so opaque that it cannot be used; or where prison officials

thwart inmates' use of the remedies); *Grullon v. Mukasey*, 509 F.3d 107, 112 (2d Cir. 2007)

(recognizing that statutory exhaustion requirements can be waived where futile); *Merth v.

Puentes*, No. 19 Civ. 251 (LJO) (SAB) (HC), 2019 WL 3003684, at *3 (E.D. Cal. July 10, 2019)

(finding that inmate's petition to Bureau of Prisons under First Step Act would be futile at the

current time, so his exhaustion requirement was waived).

### IV.     DR. NKANGA'S CONTINUED DETERIORATION AND CURRENT MEDICAL CONDITION PRESENT EXTRAORDINARY CIRCUMSTANCES UNRELATED TO THE COVID RISK HE FACED ONE YEAR AGO

Dr. Nkanga is severely ill, his health continues to decline, and he suffers from

considerable cognitive deficits.  These issues were presented to the Court in early 2020 prior to

the sentencing proceeding that was held on March 12, 2020. At the time, we wrote:

> [N]ot only did he suffer a severe stroke which has left him impaired and
> aphasic, but his mental acuity has significantly declined and is continuing to
> decline – and he is showing signs consistent with a pattern seen in Alzheimer's
> disease from which his father suffered as well as a separate form of dementia.
> (See, Dkt. No. 62 at p. 2)

This assertion was based on the forensic neurology report of Dr. Alan Jacobs (Dkt. No.

62, Exhibit A [filed under seal]), in which he wrote:



Dr. Jacobs first examined Dr. Nkanga in May 2019 and then again on February 7, 2020. In reporting on the deterioration of Dr. Nkanga's mental status, in early February 2020, Dr. Jacobs wrote:



Now, Dr. Jacobs' worry and suspicions about Dr. Nkanga's developing a " █████████ █████ " have become reality.

In July 2020, Dr. Nkanga was examined by his treating neurologist, Dr. Allan B. Perel, Fellow of the American Academy of Neurology, affiliated with Alpha Neurology, P.C., on Staten Island.

Seven months ago, he wrote:



On December 29, 2020, Dr. Perel re-examined Dr. Nkanga and wrote:





Dr. Nkanga's cognition has continued to decline, and as one example, upon a "mini" examination, Dr. Perel quantified that decline, ████████████████████

████████████████████████████

████████████████████████

On March 12, 2021, Dr. Perel re-examined Dr. Nkanga and prepared a more detailed narrative in which he discussed Dr. Nkanga's ████████████████████ ████████████ In a report dated March 16, 2021, he wrote:

*See*, Exhibit A.

## V.      DESPITE BEING VACCINATED, COVID RISKS REMAIN

Dr. Nkanga is 68 years old, suffers from hypertension, asthma, and previously suffered from a severe respiratory condition at the MDC in late 2019 *prior to the pandemic*.

The Court and the Government have likely heard that the Moderna vaccine is highly effective. Thankfully, that is so.  However, according to a report by the World Health Organization, the Moderna vaccine has an efficacy rate of 92% and, of course, it does not *prevent all infection,* it is not clear how long immunity will last, and it is not clear to what extent prison conditions can impact the efficacy of the vaccine. [4]

The World Health Organization writes:

> **Does it prevent infection and transmission?**
>
> We do not know whether the vaccine will prevent infection and protect against onward transmission. Immunity persists for several months, but the full duration is not yet known. These important questions are being studied.
>
> In the meantime, we must maintain public health measures that work: masking, physical distancing, handwashing, respiratory and cough hygiene, avoiding crowds, and ensuring good ventilation. *Id.*

In addition, it is not clear to what extent the vaccines will be effective against new strains of the virus,[5] quoting Dr. Anthony Fauci:

> Clearly, the mutants have a diminishing effect on the efficacy of the vaccines," Dr. Anthony Fauci, director of the National Institute of Allergy and Infectious Disease, said in a briefing. "We can see that we are going to be challenged." *Id.*

## VI.    DR. NKANGA'S HEALTH WOULD BE SEVERELY JEOPARDIZED IF HE WOULD BE REQUIRED TO SURRENDER TO FORT DIX

One of the areas of concern with respect to ongoing COVID risk to Dr. Nkanga remains the inability of inmates at Fort Dix and other BOP facilities to engage in the public health measures that are recommended to prevent contagion and how existing prison conditions will impact even those who have been vaccinated.

---

[4] https://www.who.int/news-room/feature-stories/detail/the-moderna-covid-19-mrna-1273-vaccine-what-you-need-to-know (last visited March 13, 2021)

[5] See, Fresh data show toll South African virus variant takes on vaccine efficacy (January 31, 2021), https://www.reuters.com/article/us-health-coronavirus-vaccines-variant-idUSKBN29Z0I7

**The Conditions at Fort Dix**

As of February 1, 2021, as reported in *U.S. v. Domenick Braccia,* 2021 WL 322895 (E.D. Pa. Feb. 1, 2021) (Beetlestone, J.): "A staggering 1,424 people incarcerated at Fort Dix have been infected and recovered[6] from COVID, and unfortunately one person recently succumbed to the virus."

FCI Fort Dix, like many other federal facilities,[7] has born witness to a dramatic and severe increase in COVID infections and has recently been described as the "worst coronavirus prison outbreak" in the country.[8]  As of February 23, 2021 according to BOP records, 134 inmates and thirty-eight staff at FCI Fort Dix were infected with COVID. The "staggering" number of cases reported three weeks earlier, had climbed even higher.

Five days later, the BOP reported 195 current inmates were positive, 38 staff were currently positive, 1648 inmates have "recovered" and one inmate has died from COVID.[9]

---

[6] "Recovered" is a term used by the BOP on its website in categorizing inmates.  *See Federal Bureau of Prisons, COVID Cases,* available at https://www.bop.gov/coronavirus  Presumably, it refers to those who are asymptomatic, understood to be no longer contagious, or are no longer testing positive for the disease.  Given that COVID symptoms can be long-lasting and lead to potentially long-term damage, not all inmates who BOP considers "recovered" have likely recovered in the ordinary sense of the word. The extent that they may suffer permanent, long-term health issues remains unknown at this time.

[7] Nationwide, 47,572 inmates and 6,407 Bureau of Prisons ("BOP") staff have tested positive and/or recovered from COVID, with 222 inmates and four BOP staff having died from the disease. *See Federal Bureau of Prisons, COVID Cases, available at* https://www.bop.gov/coronavirus.  A significant number of new variants of COVID that may be more infectious, more deadly, or otherwise possibly resistant to current vaccine technology or antibodies, have also been identified and are spreading in the United States.  *See* Carl Zimmer, *7 Virus Variants Found in U.S. Carrying the Same Mutation*, N.Y. TIMES (Feb. 14, 2021), https://www.nytimes.com/2021/02/14/health/coronavirus-variants-evolution.html.

[8] *See* Joe Atmonavage, *N.J. prison with worst COVID outbreak in the country set to get vaccine next week*, NJ.COM (Jan. 13, 2021), https://www.nj.com/news/2021/01/nj-prison-withworst-COVID-outbreak-in-the-country-set-to-get-vaccine-next-week.html.

[9] See https://www.bop.gov/coronavirus (last visited February 28, 2021)

The crisis at FCI Fort Dix has come in at least two waves:  one in late October 2020 and one in January 2021, where at both points FCI Fort Dix led the nation in COVID infections.[10]  In November, 2020, New Jersey's U.S. Senators as well as ten of its House representatives wrote to the BOP to address the first outbreak at Fort Dix and "express grave concerns regarding the Bureau of Prison's (BOP's) inadequate protocols for  COVID testing and transfers of incarcerated individuals,"[11] demanding a plan to prevent a future outbreak and to stop transfers of inmates to the prison.[12] Following the Senators' letter, transfers were halted for two weeks but resumed on November 23, 2020.[13]  After numbers spiked again in January, Senator Menendez of New Jersey told the media, "The BOP has had months to devise a plan to control the outbreak and stop the spread and they failed.  It's shameful."[14]  In early February, amid the extreme COVID outbreak and increasing pressure, BOP replaced the warden of FCI Fort Dix.[15]

Dr. Nkanga, though vaccinated, could easily be among those in the percentage for whom the vaccination would not prevent future infection, particularly given the horrid and pervasive outbreak within the walls of Fort Dix, coupled with the prison conditions there that magnify exposure. The tools used to protect vulnerable individuals -- isolation, quarantine, and social distancing -- are simply unable to be adequately implemented during incarceration. The BOP

---

[10] Joe Atmonavage, *Absolute chaos and terrifying.  The coronavirus is running rampant through N.J prison again* (Jan. 5, 2021) https://www.nj.com/news/2021/01/absolute-chaos-andterrifying-the-coronavirus-is-running-rampant-through-nj-prison-again.html. [hereinafter "*Coronavirus is Running Rampant*"]

[11] *Menendez, Booker Lead Delegation Call to Prevent COVID Spread at Fort Dix* (Nov. 9, 2020) https://www.menendez.senate.gov/newsroom/press/menendez-booker-lead-delegationcall-to-prevent-COVID-spread-at-fort-dix.

[12] *Id*.

[13] *Coronavirus is Running Rampant*, at FN 10.

[14] *Id.*

[15] Joe Atmonavage, *Ex-Warden of prison where Jeffrey Epstein committed suicide tapped to lead N.J. federal prison*, (Feb. 4, 2021), https://www.nj.com/news/2021/02/ex-warden-of-prisonwhere-jeffrey-epstein-committed-suicide-tapped-to-lead-nj-federal-prison.html.

reported that of 2,690 inmates at Fort Dix, 2,629 of them have been tested for COVID and, of those inmates, 1,934 or approximately 73% have returned positive.[16]  The mere reduction in risk from COVID to inmates who have already suffered from the virus has not prevented some courts from releasing inmates who have tested positive for COVID-19.  *See, e.g.*, *See United States v. Beniquez*, *supra*, *United States v. Vega, supra, United States v. Underwood*, No. 88-CR-822, 2021 U.S. Dist. LEXIS 8378 at *16-17 (S.D.N.Y. Jan. 15, 2021) (finding a COVID diagnosis along with evidence of rehabilitation to be compelling reason for compassionate release); *United States v. Martinez*, No. 04-CR-48-20, 2020 U.S. Dist. LEXIS 227745 at *2 (S.D.N.Y Dec. 4, 2020) (granting release where an inmate was diabetic and had tested positive for COVID-19).

There is no doubt that Dr. Nkanga's chances of contracting COVID are greatly diminished as a result of being vaccinated, but risk remains. Although scientists and experts believe that the risk of contracting COVID is greatly reduced after being vaccinated or after contracting COVID, answers are far from definitive as to what extent a person can still get COVID after being vaccinated, whether a person can still get one of the new more contagious strains of COVID that are now spreading, how long the vaccine will remain effective, whether a person will require a booster shot in the future, and whether a person with COVID risk factors remains at a heightened risk for contracting COVID even after vaccination as compared to a person who does not have pre-existing co-morbidities or other risk factors.

**The Judiciary's Perspective**

Since there have been few instances, if any, of defendants who were released from prison because of COVID concerns, then received a vaccination, and were thereafter reincarcerated and exposed to COVID anew inside a prison, courts have not generally opined on the issue presented

---

[16] *Id.*

here. Courts, however, have opined on whether defendants who were incarcerated and who were sickened by COVID should thereafter be granted compassionate release given concerns about their ability to "provide self-care" within the facility, with some courts continuing to grant sentence reductions related to COVID risks even after the risks have been diminished.  In part, those decisions have relied upon the conditions at prison facilities such as Fort Dix, *See United States v. Beniquez*, 2021 U.S. Dist. Lexis 14334, 2021 WL 260225 (J. Failla, S.D.N.Y. January 26, 2021), quoting Judge Seybert in *United States v. Vega, 2020 U.S. Dist. LEXIS 226178, 2020 WL 7060153* (E.D.N.Y. December 2, 2020), who wrote:

> Considering these factors, the Court joins those others that have held that the current COVID-19, situation in FCI Fort Dix may qualify as an extraordinary and compelling circumstance supporting compassionate release, even for an inmate who has already apparently recovered from COVID-19.

*United States v. Beniquez*, 2021 U.S. Dist. Lexis 14334 * 11.

**The BOP at Fort Dix Has Proven Inept At Providing Medical Care**

Statistics for COVID at FCI Fort Dix almost certainly belie the impact of the outbreak on the facility's ability to provide care for its inmates.  *United States v. Fernandez*, 12 Cr 844 (AJN), 2020 U.S. Dist. LEXIS 190157 (S.D.N.Y Oct. 14, 2020), at *5 (describing forty inmate cases at FCI Fort Dix in October 2020 as "significant" and a "worrying uptick.")  Not to mention that rates of infection can be volatile and increase without notice at the drop of a hat.  *Fernandez*, 2020 U.S. Dist. LEXIS 190157, at *7 (noting the "worrying uptick" of cases at Fort Dix in October 2020 from "79 to 106 within the past few weeks").  Indeed, after the first wave was down to 13 inmates positive on December 17, 2020, numbers skyrocketed to 600 inmates positive in approximately one month ago. [17]

---

[17] *Coronavirus is Running Rampant*, at FN 10.

Indeed, inmates inside Fort Dix describe being housed among other infected inmates in close quarters, poor sanitation on the "quarantine" wing, poor ventilation, insufficient working toilets and urinals, and limited janitorial supplies. *See United States v. Cameron*, 16 Cr 212 (LAK) (Dkt. No. 1556 at p. 4).

Fort Dix has reportedly not provided hand sanitizer and has not provided inmates new masks since September 2020. *See, e.g.*, *United States v. Rodriguez*, 16 Cr 07 (AJN),  2020 U.S. Dist. LEXIS 241810 at *9 (S.D.N.Y Dec. 23, 2020) (noting that "inmates have been provided only a single disposable surgical mask since the beginning of the pandemic").

Given the large numbers of inmates infected, inmates report that medical exams and treatment have been cursory, at best. *See United States v. Cameron*, 16 Cr 212 (LAK) (Dkt. No. 1556 at p. 2) and sadly, despite the BOP's claim that the inmate "denies COVID symptoms," the inmate continued to report persistent symptoms of COVID and an ongoing pneumonia infection. *Id.*

It is of no import whether the failure to provide adequate medical care to inmates at Fort Dix is the result of callous disregard, an overwhelmed administration, limited foreseeability, impaired vision, inadequate planning, practical limitations inherent in a prison environment, or simply the difficulties unique to controlling the spread of a highly contagious virus in a confined space.  Regardless, all this documented and anecdotal evidence lends great credence to the idea that Dr. Nkanga would not receive adequate medical care at Fort Dix if he were to get COVID – or just as importantly, if his other medical conditions required attention.

In *United States v. Barajas*, No. 18-CR-736-04, 2020 WL 3976991 at *10 (S.D.N.Y. July 13, 2020), the Court found extraordinary and compelling reasons justifying release existed for an inmate with undiagnosed asthma who developed severe COVID symptoms.  The Court considered the close quarters inmates shared, the slow response of the facility to the inmate's

symptoms, an apparent lack of adequate testing, and overall uncertainty about COVID to

determine that the inmate's continued confinement would "substantially diminish his ability to

provide self-care in a carceral setting given his current physical and medical condition." *Barajas*,

2020 WL 3976991 at *10-11 (internal citation omitted).

Here, there can be no doubt that the insidious nature of Dr. Nkanga's continued but, at

times, subtle cognitive decline, might well impede his ability to engage in self-care and might

well result in a "slow response" by the already strained medical staff at Fort Dix.

## VII.    THE § 3553(a) FACTORS FAVOR GRANTING THIS APPLICATION

### Dr. Nkanga Is Not a Danger to the Community

In its decision (Dkt. No. 87) dated March 31, 2020, the Court wrote at page 2:

> [I]f the law had given the Court discretion to leave Dr. Nkanga at liberty on bail
> pending sentencing (and to allow voluntary surrender thereafter), the Court would
> have done so, as there was no reason to believe that he posed a risk of flight and,
> in the absence of his medical license and practice, no reason to believe he posed a
> danger to any individual or the community.

Now, the Court's observations have proved to be prescient.  During the past year, Dr.

Nkanga not engaged in any action that posed a danger to the community. If a sentence reduction

were granted, his continued deterioration lessens the already minimal risk that he will engage in

any dangerous conduct.  Since his release from the MDC, Dr. Nkanga has remained home, fully

compliant with his bail conditions and did not try to flee – when he believed that there would

come a time when he would have to return to prison.  If a sentence reduction is granted, his

increased need for more medical care further militates against any risk of flight.  His girlfriend,

children and doctors are all in the New York City metropolitan area. Given that he did not flee

when he was temporarily bailed one year ago at a time when he believed he would have to

surrender to the BOP at some future date, if a sentence reduction is granted and he is required to

comply with its terms, there is even less of a reason now to believe he would flee in the future.

**Dr. Nkanga Has Spent the Past Year "Confined"**

During the past year, Dr. Nkanga has been confined to his home, enforced by electronic

monitoring, but for medical appointments.  Although we recognize that his home is not a prison

– far from "purgatory" – he has been confined. Of course, we also recognize the inherent

differences between the comforts of living in your home as opposed to the discomforts of

incarceration – which would include the well-reasoned, exacerbated fear of dying of COVID had

he remained at the MDC.

But, in evaluating all of the 3553(a) factors, the Court should take notice that Dr.

Nkanga's freedom has been severely restricted for the past year. So much so, that in August

2020, his church, of which he was an active and respected member and whose members wrote

letters of support to the Court prior to sentencing, began to resume services outside.  We asked

the Government if it would consent to allowing him to attend outdoor services at a time when we

believed he could remain socially distant and minimize the risk of contracting COVID. The

Government advised counsel that it opposed our request because Dr. Nkanga "… is on home

incarceration with exceptions only for necessary medical appointments, and the purpose was to

shield him from possible exposure to COVID-19 due to his medical vulnerability." Since we

recognized the Government's concerns, we did not ask the Court to amend his bail conditions.

In July, Dr. Perel recommended that Dr. Nkanga stay "mentally and physically active"

given his deteriorating cognitive state. There came a time when his girlfriend advised counsel

during the year that Dr. Nkanga had put on weight (a side effect that is not limited to him) and

she asked if counsel would be able to request an amendment of his bail conditions that would

allow him to go outside and exercise.  Recognizing that, but for the risks of COVID, he was supposed to be incarcerated and that any reasonable Court would likely look askance at a defendant who requested to "walk in the park" while out on bail in these circumstances, we did not seek to amend his bail.

These two examples reflect that Dr. Nkanga's liberty has been restricted in meaningful ways, apart from the "normal" conditions of someone who is released on home incarceration; often, defendants bail conditions are amended so that they are allowed to go to religious services and to go outside for brief periods a day to exercise or run errands.

We also recognize, of course, that *everyones'* liberty has been restricted during the pandemic for obvious reasons. But not everyone has been prohibited from leaving his or her residence at all except for medical appointments.  This one-year of home incarceration is pertinent to the Court's consideration of this application.

**Specific Deterrence Has Been Effectuated, the Defendant is Not a Danger, and Granting this Motion Will Still Reflect the Seriousness of His Crime and Deter Others**

Dr. Nkanga has been deterred from committing criminal conduct. Prior to sentencing, in arguing for a "substantial sentence of incarceration significantly above the Probation Office's 48-month recommendation, the Government wrote in its submission (Dkt. No. 63 at p. 5) "Even if the defendant is not likely to be a recidivist himself, the need to provide general deterrence should weigh heavily on the Court in imposing sentence."

Without revisiting all the sentencing litigation, in its advocacy a year ago, the Government based its argument on inapposite cases, ignoring a case "on all fours" which supported a sentence less than the 48 months recommended by Probation in the PSR (See Defendant's Sentencing Reply (Dkt. No. 64), and was one of the issues upon which the Court

focused at the sentencing hearing on March 12, 2020. The Court sentenced Dr. Nkanga to 36 months in prison.

Dr. Nkanga has now served six months in prison (in which he was sick with a severe respiratory condition for part of the time). He has served one year on home incarceration.  He has surrendered his medical license, accepted responsibility for his actions, publicly acknowledging guilt, forfeited his assets, and been stigmatized in public.[18]

Granting a sentencing reduction based on the individual factors here will not diminish general deterrence.

The Government previously wrote "that each defendant is entitled to an individualized assessment of the sentencing factors …," (Gov't Sent. Memo 63 at p. 6) and the same logic applies to evaluating the 3553(a) factors in the context of a sentence reduction motion.

**This Application is Consistent With Promoting Respect for the Law and a Revised Sentence Would Still Reflect a Just Punishment**

Granting this application and requiring that Dr. Nkanga remain on home confinement would reflect a just punishment in this case while still promoting respect for the law.  This Court believed that the 36-month sentence it imposed one year ago was "reasonable" and sufficient to promote respect for the law. Now, circumstances have changed such that, after serving a period of incarceration, respect for the law can still be promoted by granting this application.  Some courts have found that a revised sentence can reflect a new "reasonableness," in circumstances which have changed. See *United States v. Fernandez*, 12 Cr 844 (AJN), 2020 U.S. Dist. LEXIS 190157 (S.D.N.Y Oct. 14, 2020)(court granted a sentence reduction in October 2020 after

---

[18]*See* https://www.justice.gov/usao-sdny/pr/staten-island-doctor-pleads-guilty-illegally-distributing-oxycodone-1 and
https://www.silive.com/news/2020/03/doctors-from-eltingville-and-dongan-hills-sentenced-in-separate-pill-mill-schemes.html

denying it in June 2020, noting, *inter alia*, "The time he has served has already achieved much of the original sentence's purpose." (Dkt. No. 468 at p. 8).

## VIII.   CONCLUSION

We submit that one of the many things that has changed during the past year is a recognition by the judiciary (and in some cases, the Government) that prison sentences which were once thought to be necessary are no longer viewed as such.  A change in circumstances has resulted in a change of perspective, which has given new meaning to the parsimony clause of 18 U.S.C. § 3553(a).

There are compelling reasons that this Court should hold that now the 3553(a) factors weigh heavily in favor of the granting of this application.  Granting this application for a sentence reduction is entirely consistent with basic principles of justice, Dr. Nkanga's individual circumstances, and parity.

For the foregoing reasons, we respectfully request that the Court grant Dr. Nkanga's request for a sentence reduction and revise his sentence so that he is not required to serve any further period of incarceration, while imposing whatever terms of supervised release this Court believes are just and reasonable.

Dated: New York, New York
        March 23, 2021

Respectfully submitted,


Daniel S. Parker
Parker and Carmody, LLP
30 East 33rd St., 6th Floor
New York, NY 10016
DanielParker@aol.com
Tel: 917-670-7622

Joshua J. Horowitz
Horowitz Tech Law P.C.
734 Franklin Ave., #605
Garden City, New York 11530
joshua.horowitz@techlawny.com
Tel: (212) 203-9011
*Attorneys for Nkanga Nkanga*