UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                       :
UNITED STATES OF AMERICA,                      :

      -v-                                                :          18-CR-713 (JMF)

NKANGA NKANGA,                               :          MEMORANDUM OPINION
                                                       :                AND ORDER
                       Defendant.               :

------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       On March 13, 2020, the undersigned began working remotely due to the COVID-19 pandemic. One of the Court's final acts in the courthouse — the day before — was to sentence the Defendant in this case, Dr. Nkanga Nkanga, to thirty-six months' imprisonment for his role in unlawfully distributing oxycodone and other controlled substances. *See* ECF No. 66. In the weeks that followed, as the potentially grave implications of COVID-19 for those detained in jails and prisons came into focus, Dr. Nkanga's counsel tried repeatedly to secure his temporary release on bail. *See* ECF Nos. 73, 88, 94, 101. With respect to the first few applications, the Court reluctantly agreed with the Government that it lacked authority to grant Dr. Nkanga's release. *See* ECF Nos. 87, 91, 116. But on April 7, 2020, Dr. Nkanga's counsel found a vehicle to secure his release. That evening, with the Government's consent, the Court granted temporary release to Dr. Nkanga in connection with a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 that counsel had filed earlier that morning. *See* ECF No. 120. In the months that followed, the Court repeatedly extended Dr. Nkanga's surrender date, citing the continuing risks posed by COVID-19. *See* ECF Nos. 129, 131, 134, 136. On March 19, 2021, after he had received the first dose of a COVID-19 vaccine, Dr. Nkanga requested that the Court give him

until May 14, 2021, to surrender to FCI Fort Dix, the facility to which he had been designated on April 6, 2020. *See* ECF No. 146. The Court granted that request. *See* ECF No. 147.

Having succeeded in putting off the date of his surrender while the risks posed by COVID-19 were at their highest, Dr. Nkanga now seeks to put off the date forever. Specifically, on March 23, 2021 — four days after the Court set his surrender date — Dr. Nkanga filed a motion seeking "compassionate release" pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* ECF No. 148 ("Def.'s Mem."). As amended by the First Step Act, Section 3582 provides generally that a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). To the extent relevant here, the statute then provides an exception to that rule as follows:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . [1] extraordinary and compelling reasons warrant such a reduction . . . and [2] that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.* § 3582(c)(1)(A). Significantly, although the relief provided by Section 3582(c)(1)(A) is "often referred to as 'compassionate *release*,'" the Second Circuit has held "that the statute allows for *any* sentence reduction — up to and including but not limited to time served — so long as . . . that reduction is warranted by extraordinary and compelling reasons, consistent with the applicable policy statement, and appropriate in light of the Section 3553(a) factors." *United States v. Rodriguez*, 492 F. Supp. 3d 306, 309 (S.D.N.Y. 2020) (emphasis added) (referring to *United States v. Brooker*, 976 F.3d 228, 233-37 (2d Cir. 2020)). Dr. Nkanga, as the movant, "has the burden to show [that] he is entitled to a sentence reduction" under the terms of the statute. *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

Measured against the statutory standards, Dr. Nkanga's case for avoiding imprisonment altogether is quite weak.  He proffers two principal bases for such relief: the continuing risks posed by COVID-19 and his medical condition, which allegedly includes "considerable cognitive deficits."  Def.'s Mem. 14.  But whether the issue is considered in reference to the existence of "extraordinary and compelling reasons" justifying relief or to the sentencing factors set forth in Section 3553(a), the former does not support relief because Dr. Nkanga is now fully vaccinated.[1]  As a result, he "now has significant protection against serious illness or death should he contract COVID-19."  *United States v. Singh*, No. 4:15-CR-00028-11, 2021 WL 928740, at *3 (M.D. Pa. Mar. 11, 2021).[2]  The latter is more compelling, as the record does suggest that Dr. Nkanga "has a significant neurological deficit, his condition is progressive, and he has continued to exhibit significant cognitive decline."  ECF No. 155 ("Def.'s Reply"), at 10 (internal quotation marks omitted).  But notably, "[t]he Court took account of both his serious health issues and the fact that they were likely to get progressively worse with time when imposing sentence" last year.  *United States v. Contreras Ortega*, No. 11-CR-483-2 (JMF), 2021

---

[1] Additionally, conditions at FCI Fort Dix are no longer terrible (as they certainly were a few months ago, *see* Def.'s Mem. 18-20) and appear to be improving at a rapid clip.  At present, the facility has only six positive cases among inmates, and at least 53% of the inmate population (1,478 out of 2,805) is fully vaccinated.  *See* https://www.bop.gov/coronavirus/ (last visited Apr. 23, 2021); https://www.bop.gov/locations/institutions/ftd/ (last visited Apr. 23, 2021).  By comparison, as of February 28, 2021, the facility had 195 positive inmates, *see* Def.'s Mem. 18, and as of April 6, 2021, only 206 inmates had been vaccinated, *see* ECF No. 151 ("Gov't Mem."), at 8.

[2] Dr. Nkanga acknowledges that the Moderna vaccine he received is "highly effective," but, citing a World Health Organization report, argues that "it does not *prevent all infection*, it is not clear how long immunity will last, and it is not clear to what extent prison conditions can impact the efficacy of the vaccine."  Def.'s Mem. 17.  At bottom, these arguments are entirely speculative.  Needless to say, Dr. Nkanga can renew his request for relief "should future evidence demonstrate that new COVID-19 variants render the Moderna vaccine significantly less effective at preventing serious illness or death from COVID-19" or the protection afforded by vaccination diminishes over time, "such that [he] is at a substantial risk of serious illness or death from a COVID-19 infection."  *Singh*, 2021 WL 928740, at *4.

U.S. Dist. LEXIS 76717, at *3 (S.D.N.Y. Apr. 21, 2021); *see* ECF No. 77-1 ("Sent. Tr."), at 42. In fact, the Court relied principally on Dr. Nkanga's health — and the likelihood that it would worsen — in granting a "substantial variance" from the Sentencing Guidelines range of 108 to 135 months' imprisonment to the sentence of thirty-six months' imprisonment that the Court imposed. Sent. Tr. 41-43; *see Contreras Ortega*, 2021 U.S. Dist. LEXIS 76717, at *2-4 (denying a motion for compassionate release in similar, if not more compelling, circumstances).

Dr. Nkanga may have a stronger case for a reduction of his sentence based on, among other things, the conditions and circumstances of his confinement between March 12, 2020, and April 7, 2020, and the restrictions on his liberty since April 7, 2020. *See Rodriguez*, 492 F. Supp. 3d at 311, 316-17 (granting a reduction in sentence based, in part, on the fact that the COVID-19 pandemic made the defendant's "incarceration harsher and more punitive than would otherwise have been the case"). But the Court need not decide that question before Dr. Nkanga surrenders to serve his sentence. And, in fact, there are strong arguments that the Court should, and perhaps must, wait before doing so. As noted above, before moving for compassionate release, a moving defendant must either "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf" or wait thirty days after submitting a request to "the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). That requirement is rooted in a recognition that the Bureau of Prisons ("BOP") "is frequently in the best position to assess, at least in the first instance, a defendant's conditions, the risk presented to the public by his release, and the adequacy of a release plan." *United States v. Russo*, No. 16-CR-441 (LJL), 2020 U.S. Dist. LEXIS 59223, at *6 (S.D.N.Y. April 3, 2020). Additionally, "the fruits of administrative review" can ultimately "aid[]" a court tasked with deciding whether release or a sentencing reduction is warranted. *Id.*

Dr. Nkanga argues that he has satisfied the statute's exhaustion requirement, either or both through a request for release that he submitted on April 1, 2020, to the Warden of the Metropolitan Detention Center (where he was then detained) or through a request that his counsel submitted on April 1, 2021 (a year to the day after his last request) to the Warden of FCI Fort Dix (where he is due to surrender in a few weeks). *See* Def.'s Mem. 13; Def.'s Reply 4-6. But it is not clear that either request fulfils the statutory requirement. As the Government notes, the "the BOP has no record of ever receiving" the first request. Gov't Mem. 6 n.1. Moreover, it "assert[ed] different arguments" than those contained in Dr. Nkanga's present motion. *Id.* at 6. *But see, e.g.*, *United States v. Gluzman*, No. 7:96-CR-323 (LJL), 2020 WL 4233049, at *11 (S.D.N.Y. July 23, 2020) ("[T]he statute contains no requirement that the basis for the defendant's motion . . . be identical to the basis of the defendant's request to the warden . . . ."); *cf. Carr v. Saul*, No. 19-1442, 2021 WL 1566608, at *4 (U.S. Apr. 22, 2021) (explaining that when an exhaustion statute does not expressly impose an issue-exhaustion requirement, "the reasons for a court to require issue exhaustion are much weaker when an administrative proceeding is not adversarial" than "when the parties are expected to develop the issues in an adversarial administrative proceeding" (internal quotation marks omitted)). And the second request may be deficient because, until Dr. Nkanga surrenders, FCI Fort Dix is not technically "the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).³ Relatedly, it is not even clear that the Court has authority to grant Dr. Nkanga the relief he seeks before he enters BOP custody. As the Government notes, *see* Gov't Mem. 6-7 & n.2, the law in this Circuit is unsettled with respect to whether a court has authority to grant relief under the compassionate release statute where, as

---

³ Indeed, the second request appears to have been rejected on that basis. *See* ECF No. 155-3 ("Please forward this correspondence after the inmate arrives at this facility.").

here, a defendant is not in BOP custody. *Compare, e.g., United States v. Konny*, 463 F. Supp. 3d 402, 404 (S.D.N.Y. 2020) (holding that the statute "applies only to those defendants who have begun serving their term of imprisonment at a BOP facility"), *with United States v. Austin*, 468 F. Supp. 3d 641, 643-44 (S.D.N.Y. 2020) (granting relief to a defendant who had been released from BOP custody after serving most of his sentence, but limiting that holding to "the narrow and exceptional situation presented").

In light of these thorny and unsettled questions (on which the Court need not and does not ultimately intimate a view), the lack of merit to Dr. Nkanga's arguments for relief from incarceration altogether, and the potential benefits of giving the BOP a meaningful opportunity to consider Dr. Nkanga's application for relief in the first instance (whether that is statutorily required or not), Dr. Nkanga's motion for compassionate release is DENIED — albeit without prejudice to a renewed motion once Dr. Nkanga is in BOP custody *and* satisfies the statute's exhaustion requirements through a new request to the warden of his facility. Put differently, by granting Dr. Nkanga bail until conditions had significantly improved and he was fully vaccinated, the Court accomplished what it set out to do a little over a year ago: protect him from the "grave danger" that COVID-19 would have posed to him in prison by "delay[ing] his surrender until th[at] danger had passed." *United States v. Nkanga*, 450 F. Supp. 3d 491, 492, 497 (S.D.N.Y. 2020). With that goal accomplished, the time has come for Dr. Nkanga to surrender to the BOP and serve prison time for his serious crimes.

The Clerk of Court is directed to terminate ECF No. 148.

SO ORDERED.

Dated: April 23, 2021
New York, New York

JESSE M. FURMAN
United States District Judge